### Henry F. Owens, Third *vs.* Ilunga J. Mukendi.

Suffolk. October 5, 2006. - December 20, 2006.

Present: Greaney, Spina, Cowin, Sosman, & Cordy, JJ.

*Practice, Civil,* Relief from judgment. *Judgment,* Relief from judgment.

A Superior Court judge did not abuse her discretion in concluding that a motion for relief from judgment, brought by the defendant in a civil action on the ground that he had relied on advice he had received from the plaintiff (an attorney representing the defendant in unrelated matters), presented an extraordinary circumstance justifying relief under Mass. R. Civ. P. 60 (b) (6) [71-74]; however, the defendant's three and one-half year delay in bringing the motion was unreasonable [74-77], and his request that his motion for relief be considered an independent action based on the court's inherent equity power was unavailing [77].

Civil action commenced in the Superior Court Department on November 21, 1997.

The case was heard by *Janet L. Sanders,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Neal A. Rosen (Jenny K. Cooper* with him) for the defendant.

*John J. Barter* for the plaintiff.

Cordy, J. This case requires us to determine whether a judgment obtained through the alleged misuse of the plaintiff's position as attorney for the defendant, to induce the defendant to default and abandon any defense to the assessment of damages, was properly vacated under Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974) ("any other reason justifying relief from the operation of the judgment"), more than three years after its entry.

A judge in the Superior Court vacated the default judgment, concluding that the defendant, Dr. Ilunga Mukendi, had meritorious defenses to the claims and that conflicts of interest and related conduct by the plaintiff, Attorney Henry F. Owens, III, caused

Mukendi to abandon those defenses. This, the judge ruled, constituted extraordinary circumstances not falling under the grounds enumerated in rule 60 (b) (1)-(5), which rule 60 (b) (6) was intended to address.[1] The judge also ruled that she was not bound by the one-year filing limitation that applied to subsections (1)-(3) of the rule, and that the three and one-half year period between the default judgment and the filing of the motion to vacate it was reasonable, where Mukendi had been "persuaded by Owens' assurances that he had no intention of collecting on it." Subsequently, another Superior Court judge granted summary judgment for Mukendi.

On appeal, the Appeals Court reversed the allowance of the motion to vacate the judgment, concluding that the grounds claimed by Mukendi fell squarely within rule 60 (b) (3) ("misconduct of an adverse party"). Consequently, the motion was not properly allowed under rule 60 (b) (6), and the filing of the motion was untimely in light of the one-year limitation period applicable to rule 60 (b) (3). *Owens* v. *Mukendi*, 64 Mass. App. Ct. 820, 824-826 (2005). We granted the defendant's application for further appellate review.

We reverse, but on different grounds. We conclude that the

---

[1] Rule 60 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 828 (1974), provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of review, of error, or audita querela, and petitions to vacate judgment are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

motion was properly considered by the Superior Court judge under rule 60 (b) (6), but that the delay in its filing was unreasonable where Mukendi was, or at least reasonably should have been, aware of the grounds on which it could have been brought long before bringing it,[2] and his reason for the length of the delay was plainly contradicted in the record.

1. *Background.*[3] In 1987, Mukendi hired Owens to represent him in a landlord-tenant matter. Through this representation, Owens learned that Mukendi controlled two companies, Afrieza and Miminco (companies), operating in the Democratic Republic of the Congo, that were in the business of mining and exporting diamonds. Beginning in 1989, Owens began lending money to Mukendi, and advancing money to Mukendi's companies. Also in 1989, a written agreement was entered into between Owens and the companies regarding his funding of the companies, stock in the companies he was to receive in connection with that funding, and a schedule for certain repayments. Mukendi was a signatory to this agreement, which Owens drafted. Owens did not advise Mukendi to have the agreement reviewed by another lawyer.[4] The agreement was unclear about the capacity in which Mukendi was signing and whether it was

[2]The plaintiff, Henry F. Owens, III, also asks us to reverse summary judgment entered in favor of the defendant, Ilunga J. Mukendi. It is unnecessary that we do so in light of our ruling.

[3]We take these facts from the affidavits and documents filed by the parties in the case. There was no evidentiary hearing held by the judge before her ruling on Mukendi's motion to vacate the judgment, and the affidavits of Owens and Mukendi are at odds on a number of relevant points, particularly in regard to whether Owens had ever discouraged Mukendi from answering the law suit, or represented that he did not intend to collect on the judgment. In her ruling on Mukendi's motion, the judge appears to accept Mukendi's version of disputed conversations. The parties do not contend that an evidentiary hearing should have been held. For the purpose of deciding this appeal, we accept Mukendi's affidavits, as augmented by the documents submitted by both parties, and Owens's affidavit to the extent not contradicted by specific averments in Mukendi's affidavits. We do not, however, make any findings of fact on disputed matters.

[4]Apparently, the two companies, Afrieza and Miminco (companies), had used the law firm of Choate, Hall & Stewart as corporate counsel for some matters, but Mukendi contends that no counsel other than Owens was involved in this transaction. Owens contends that Mukendi told him he was going to have Choate, Hall & Stewart review the agreement.

intended (or understood by Mukendi) that he would be personally liable to Owens for the money advanced to the companies.[5]

In total, Owens lent or advanced nearly $350,000 to the companies and to Mukendi. In November, 1989, Mukendi apparently agreed to pay Owens $500,000 as repayment of this amount with interest. However, no payments were forthcoming. Several subsequent promises of payment by Mukendi also went unfulfilled. Owens wrote Mukendi on August 2, 1990; March 11, 1994; and January 4, 1997, expressing his frustration with the lack of payment. In those letters, Owens threatened that he would go to the United States Attorney's office and institute a criminal investigation of Mukendi; contact the United States Immigration and Naturalization Service to have his "green card" revoked; see that he was denied entry into the country; and, finally, file a law suit against him if payment was not made. Despite these threats, Owens continued to represent Mukendi on matters unrelated to the companies, and, on at least one occasion, appears to have represented the companies as well.[6]

On November 21, 1997, Owens filed suit against Mukendi seeking, among other things, the repayment of the money he had advanced to Mukendi and the companies in accord with the 1989 agreement. Mukendi did not file an answer to Owens's complaint, and a default judgment was entered against him on April 15, 1998. In an affidavit filed in connection with his October, 2001, motion to vacate the judgment, Mukendi states that he spoke to Owens about the law suit after it was filed, that Owens told him not to worry about the law suit, and that he (Owens) had only filed it to satisfy investors and would not actually pursue it. Mukendi also avers that he then met with At-

---

[5]Matters regarding the nature of the agreement, the monies advanced to Mukendi and the companies, and whether Owens received a thirty-five per cent stock interest in the companies in return, were largely resolved in Mukendi's favor on summary judgment. We need not consider them here, as they are not necessary to our resolution of the question whether the default judgment was properly vacated.

[6]In 1993, Owens represented Mukendi in a contract dispute between Mukendi and his son's school. In 1995, he represented Mukendi in retrieving property (a green card) from his former wife. On May 21, 1998, subsequent to the entry of the default judgment against Mukendi, but before the assessment of damages, Owens wrote a letter to an official in the United States embassy in the Congo representing that he was the attorney for the companies.

torney Samuel Rodriguez to discuss hiring him to file an answer, that Rodriguez requested a $5,000 retainer, that Mukendi let Owens know about this proposed arrangement, and that Owens told Mukendi " 'not to worry about the lawsuit,' and instead to pay him [Owens] the $5,000," which Mukendi states he did. Based on Owens's reassurances, Mukendi claims he neither filed an answer nor attended any of the proceedings. He also claims to have explained to Rodriguez that he was not going to need his services because Owens had told him to ignore the law suit.

When a hearing on the assessment of damages was scheduled for July 15, 1998, Rodriguez filed an appearance on behalf of Mukendi and a motion to continue the hearing, about which he had just been informed, so he could prepare. The motion was denied, and judgment in the amount of $494,050.65 (plus interest) was entered against Mukendi a few days thereafter. Mukendi states in his affidavit that Rodriguez filed an appearance and attended the hearing (seeking a continuance) without his knowledge or authorization. Mukendi also avers that after the monetary judgment was entered, he spoke to Owens on some unspecified occasions, and was led further to believe that Owens would not attempt to collect the debt from him.

In spite of the reassurances Mukendi claimed he had received, in November, 1998, Owens collected funds from one of Mukendi's bank accounts that had been held under trustee process attachment. Thereafter, on January 6, 1999, Owens obtained an execution on the judgment in the amount of $562,985.77. Subsequently, on February 19, 1999, an attorney in Owens's law firm sent a copy of the execution to Mukendi and wrote that "aggressive, uncompromising and relentless" efforts would be taken to collect on the execution. Later that year, in December, 1999, Mukendi (represented by counsel) filed a financial statement in a Probate and Family Court proceeding identifying his liabilities, including the judgment against him and the consequent debt to Owens of "$450,000." Another similar filing was made in the Probate and Family Court in October, 2000, while he was represented by another attorney.

In April, 2000, and again throughout the fall of 2000, Owens and Mukendi met to discuss payment of the outstanding

judgment. On November 13, 2000, Mukendi wrote Owens a letter, "Re: Execution dated January 6, 1999 for an amount of $562,985.77." The letter was "in response to your request for the satisfaction of the above-referenced execution." In it, Mukendi anticipates that the "problem" with his companies will shortly be resolved, and that "I will do everything in my power to begin payment very soon, and hopefully within the next month." On February 15, 2001, Owens wrote back to Mukendi that over six weeks had passed since their last meeting at which "I [Owens] informed you that I was going to take legal action against you as the result of my outstanding judgment," insofar as Mukendi had given him "no alternative."

By February, 2001, Owens had commenced supplementary process proceedings against Mukendi in the Brookline Division of the District Court Department to collect on the judgment.[7] During the course of these proceedings, Mukendi was ordered to pay Owens various amounts (including $10,000 on June 8; $5,000 on July 17; $5,000 on July 23; $10,000 on October 1). On October 4, 2001, three and one-half years after the default judgment was entered and nine months after supplementary process proceedings had commenced, Mukendi, through Rodriguez, filed his motion to vacate the judgment pursuant to rule 60 (b) (6).

2. *Discussion.* a. *Relief under rule 60.* "Rule 60 sets forth a comprehensive framework for obtaining relief from a final judgment or order, balancing the competing needs for finality and flexibility to be certain that justice is done in light of all the facts." *Sahin* v. *Sahin*, 435 Mass. 396, 399-400 (2001), and cases cited.

"Rule 60 (b) (6) authorizes relief from a final judgment in various circumstances. . . . However, relief under Rule 60 (b) (6) is limited to instances 'when the vacating of judgment is justified by some reason other than those stated in subdivisions (1) through (5),' " *Parrell* v. *Keenan*, 389 Mass. 809, 814 (1983), quoting *Chavoor* v. *Lewis*, 383 Mass. 801, 803 (1981), that presents "extraordinary circumstances." *Bromfield*

---

[7]The record is unclear about precisely when supplementary process proceedings were commenced. It could have been January, 2001, or even some time in late 2000. However, it clearly had been commenced as of February, 2001.

v. *Commonwealth*, 400 Mass. 254, 257 (1987). "A motion pursuant to rule 60 (b) (6) is addressed to the discretion of the judge," *Parrell* v. *Keenan, supra* at 815, and "will not be reversed on appeal save for abuse" of that discretion. *Id.*, quoting *Clarke* v. *Burkle*, 570 F.2d 824, 830 (8th Cir. 1978).[8] A rule 60 (b) (6) motion must also be brought within a reasonable time, and a determination of what constitutes a reasonable time is similarly "addressed solely to the judge's discretion." *Parrell* v. *Keenan, supra*, quoting *Chavoor* v. *Lewis, supra* at 805 n.4.

A judge considering a rule 60 (b) (6) motion may consider whether the moving party "has a meritorious claim or defense . . . whether extraordinary circumstances warrant relief . . . and 'whether the substantial rights of the parties in the matter in controversy' will be affected by granting the motion" (citations omitted). *Parrell* v. *Keenan, supra*, quoting *United States* v. *Cato Bros.*, 273 F.2d 153, 157 (4th Cir. 1959).

The judge found that Mukendi had a meritorious defense grounded in the minimal writings evidencing the loans, the fact that some of the money was paid to the companies in return for the issuance of stock, and the likelihood that some of Owens's claims were time barred at the time he filed suit. The judge also found that Owens's role as Mukendi's attorney in certain matters during the time he was lending money to Mukendi, and seeking its repayment, created a conflict of interest that "may itself constitute the extraordinary circumstances which rule 60 (b) (6) is intended to address." The substantial sums of money involved convinced the judge that the respective rights of both Owens and Mukendi would be affected by granting relief. The fact that Mukendi waited more than three years to file the rule 60 (b) (6) motion did not seem unreasonable to the judge in light of Mukendi's allegation that Owens convinced Mukendi he had no intention of collecting on the judgment. We agree with the motion judge that Owens's conduct in representing Mukendi while engaging in financial transactions with him, coupled with advising Mukendi not to hire counsel to represent himself in a law suit arising out of those same transactions (if

---

[8]Our rule 60 (b) is identical to Fed. R. Civ. P. 60 (b) in all relevant respects and is thus given the same construction. *Sahin* v. *Sahin*, 435 Mass. 396, 400 n.7 (2001), citing *Chavoor* v. *Lewis*, 383 Mass. 801, 806 n.5 (1981).

true, see note 3, *supra*), gives rise to extraordinary circumstances properly considered under rule 60 (b) (6). We also agree that both Owens's and Mukendi's substantial rights would be affected by rule 60 (b) relief and that Mukendi may have a meritorious defense. We do not, however, agree that Mukendi filed his motion for relief within a reasonable period of time.

Owens argues that Mukendi's motion fell within rule 60 (b) (1) or (3) and was thus required to have been brought within one year of the default judgment. "Rule 60 (b) (1) allows a judge to grant relief from a judgment on the grounds of 'mistake, inadvertence, surprise, or excusable neglect.' " *Gath* v. *M/A-Com, Inc.*, 440 Mass. 482, 496-497 (2003), quoting Mass. R. Civ. P. 60 (b) (1). Relief may be granted under rule 60 (b) (3) if there has been fraud, misrepresentation, or other misconduct of an adverse party. However, where there is "something more" than one of the grounds stated in rule 60 (b) (1)-(5), rule 60 (b) (6) relief may be appropriate and the one-year limitation of rule 60 (b) (1)-(3) does not apply.[9] 11 C.A. Wright, A.R. Miller, & M.K. Kane, Federal Practice and Procedure § 2864 at 350-351 (2d ed. 1995) (Wright). The question is whether what occurred here constitutes "something more" than the grounds for relief set out in rule 60 (b) (1) and (3), giving rise to extraordinary circumstances.

It was not mistake, inadvertence, surprise, or excusable neglect on Mukendi's part that led to the entry of the judgment in this case. Rather, it was Mukendi's belief in the repeated representations of the plaintiff, Mukendi's business partner and lawyer, that he need not defend the case and would not be pursued for payment of the judgment, that led to its entry. In these circumstances, rule 60 (b) (1) does not apply.

As concerns rule 60 (b) (3), the Appeals Court was correct in concluding that Mukendi's allegations (if true) constituted misconduct by Owens, an adverse party in the litigation. But Owens was not just an adverse party; he had also been Muken-

---

[9]Motions brought under rule 60 (b) (1)-(3) must be brought within a reasonable time and not more than one year after the judgment, order or proceeding was entered or taken. We do not address subsections (2), (4), and (5), because they are not applicable to this motion. There is no newly discovered evidence and no party has asserted that the judgment is void or has been satisfied, released, or discharged.

di's attorney. As such, he had special obligations and duties beyond that of an ordinary litigant. Those duties included the duty to advise Mukendi that he (Owens) had a conflict of interest, could not advise him on matters related to the litigation, and, indeed, that Mukendi should seek the advice of other counsel. See Mass. R. Prof. C. 1.7, as amended, 430 Mass. 1301 (1999). Instead, Owens counselled Mukendi that he should not defend the action, that he did not need a lawyer to represent him, and that he should pay Owens the money he would have spent hiring an attorney.[10]

Insofar as the seriousness of this misconduct arises principally out of the rules and obligations imposed on Owens as Mukendi's attorney, rather than out of those otherwise applicable to an adverse party in litigation, we are satisfied that the judge did not abuse her discretion in concluding that Mukendi's motion presented an extraordinary circumstance that did not fit neatly or completely within rule 60 (b) (1) or (3), and justified relief under rule 60 (b) (6).

We conclude otherwise with respect to the judge's ruling that Mukendi's motion was filed within a "reasonable time." Rule 60 (b) (6) does not have an outside limit of one year. A rule 60 (b) (6) motion must simply be filed within "a reasonable time," which may be more or less than the one-year limit established for motions filed under rule 60 (b) (1)-(3). *Cotto* v. *United States*, 993 F.2d 274, 280 (1st Cir. 1993). "What constitutes reasonable time must of necessity depend upon the facts in each individual case." Wright, *supra* at § 2866, at 382, quoting *In re Cremidas' Estate*, 14 F.R.D. 15, 18 (D. Alaska 1953). See *Paternity of Cheryl*, 434 Mass. 23, 30 (2001). In determining whether a motion was filed within a reasonable time, a judge may consider the reasons for delay; the ability of the movant to learn of the grounds earlier; prejudice to the parties, if any; and the important interest of finality. *Ingram* v.

---

[10]That Owens also engaged with Mukendi in the very financial transactions at issue in the litigation, at less than arm's length, during the years he represented Mukendi in other matters, and without (allegedly) advising him to seek independent legal advice regarding those transactions, compounds the aura of professional misconduct that pervades this case. See Mass. R. Prof. C. 1.8, 426 Mass. 1338 (1998).

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 371 F.3d 950, 952 (7th Cir. 2004). We discuss each of these considerations in turn.

In spite of Mukendi's claim that the reason for his delay in filing the rule 60 (b) (6) motion was Owens's assurances made before and after the default judgment entered in 1998, that he did not intend to pursue Mukendi for the debt, Mukendi was repeatedly put on notice that this was not the case. As early as November, 1998, Mukendi was aware that the funds he held in an account at Boston Federal Savings Bank were unavailable to him because the court allowed Owens's motion to charge the bank, as trustee, for those funds. By February, 1999, Mukendi had received, in writing, both notice of the execution on the judgment that Owens had obtained and a strongly worded expression of his intent aggressively to collect on it. Indeed, by December, 1999, Mukendi recognized the judgment against him and the debt owed to Owens in filings he made under the pains and penalties of perjury in the Probate and Family Court. During the year that followed, Mukendi met repeatedly with Owens to discuss payment and then wrote Owens a letter, on November 13, 2000, acknowledging his debt to him of more than $500,000 and his willingness and intention to commence payment within the month. Yet, another eleven months passed before the motion to vacate judgment was filed. To conclude that Mukendi was not reasonably on notice that Owens intended to collect the debt until February, 2001, when a supplementary process action was filed in the Brookline District Court, is belied by the extensive record before the court.[11]

With respect to whether Mukendi had the ability to learn of the grounds for his motion earlier, i.e., that Owens had a conflict of interest both at the time of the 1989 agreement and at the time he advised Mukendi not to defend his law suit, it is relevant that Mukendi knew of the facts underlying these grounds at the time judgment was entered. Whether he understood their legal importance may, of course, depend on his sophistication and ac-

---

[11]Six weeks before February 15, 2001, Owens put Mukendi on notice that he was going to institute additional litigation in light of Mukendi's continued nonpayment of the judgment. Even after the supplementary process action was brought, Mukendi waited eight months before filing his motion to vacate the judgment.

cess to legal counsel. On these points, the record reveals that Mukendi is both a doctor and a businessman of some sophistication, having engaged in the creation and funding of an international enterprise, and that enterprise had in fact retained capable corporate counsel (not Owens) to assist in its formation. It is also apparent that Mukendi was not handicapped in his ability to access his own counsel. To the contrary, he discussed the litigation with Rodriguez after it was filed, claims to have explained to Rodriguez that Owens had persuaded him not to defend the action, and then apparently advised Rodriguez of the assessment of damages hearing in July, 1998 (even though he later disavowed authorizing Rodriguez to attend it on his behalf).[12] Thereafter, he was represented by two different attorneys in Probate and Family Court proceedings, in 1999 and 2000, in which he filed financial statements setting forth as a valid personal debt the judgment entered against him in this litigation. On these facts, we do not see that Mukendi was in some particular way disabled from learning of the legal grounds of his motion until 2001.

With respect to the last two considerations, it seems apparent that both parties stand to be prejudiced depending on the outcome of the motion, and that any greater prejudice that might inure to Mukendi is offset by the system's important interest in finality. See *Ingram* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra.*

Taken together, these considerations weigh heavily against the three and one-half year delay at issue here. See *Bromfield* v. *Commonwealth*, 400 Mass. 254, 257-258 (1987) (rule 60 [b] [6] motion filed more than three years after entry of judgment not within reasonable time where grounds for relief known to plaintiffs at time of judgment); *Sarin* v. *Ochsner*, 48 Mass. App. Ct. 421, 422, 426 (2000) (rule 60 [b] [6] motion filed nearly three years after entry of judgment not within reasonable time where defendant appeared at hearings on damages at time of default judgment); *Klimas* v. *Mitrano*, 17 Mass. App. Ct. 1004 (1984) (rule 60 [b] [6] motion filed ten months after plaintiff learned of dismissal of action not reasonable); *Middleton* v. *Mc-*

---

[12]Rodriguez was, of course, also the attorney who filed the motion to vacate the judgment on Mukendi's behalf in October, 2001.

*Donald*, 388 F.3d 614, 617-618 (8th Cir. 2004) (three-year delay following settlement agreement not reasonable time for rule 60 [b] [6] relief); *Nucor Corp.* v. *Nebraska Pub. Power Dist.*, 999 F.2d 372, 374-375 (8th Cir. 1993) (rule 60 [b] [6] motion filed three and one-half years after entry of judgment not reasonable where defendant knew of grounds for relief at time of judgment); *Moolenaar* v. *Government of the V.I.*, 822 F.2d 1342, 1348 (3d Cir. 1987) (noting that two-year delay between trial and filing of rule 60 [b] [6] motion not reasonable time); *Delzona Corp.* v. *Sacks*, 265 F.2d 157, 159 (3d Cir. 1959) (two years between entry of judgment pursuant to parties' stipulation and filing of rule 60 [b] [6] motion not "reasonable time" where defendant acquired knowledge forming grounds for rule 60 [b] [6] relief at least seven months before filing); *Gilmore* v. *Hinman*, 191 F.2d 652 (D.C. Cir. 1951) (sixteen months after entry of judgment not reasonable time to file rule 60 [b] motion). Mukendi's motion was filed far too late, and beyond the limits that discretion might otherwise permit.

b. *Independent action.* Mukendi also requested, in the alternative, that his motion for relief be considered as an independent action based on the court's inherent equity power. An independent action may warrant relief based on "judicial principles governing untimely requests for equitable relief from fraudulent judgments." *Sahin* v. *Sahin*, 435 Mass. 396, 401 (2001), quoting *Geo. P. Reintjes Co.* v. *Riley Stoker Corp.*, 71 F.3d 44, 48 (1st Cir. 1995). Grounds for such an action are very narrow and require something more than common-law fraud. *Sahin* v. *Sahin, supra* at 401-402. The alleged conduct at issue here, while highly improper, does not constitute a fraudulent judgment or, to the extent there is a difference, a fraud on the court. An independent action is not appropriate. Even were we to conclude that Owens's conduct constituted such a fraud, Mukendi's request for an independent action was untimely for the same reasons his request for rule 60 (b) (6) relief was untimely. Mukendi "should not be able to avoid the . . . 'reasonable time' limits of rule 60 (b) simply by commencing an independent action seeking the same relief." *Sahin* v. *Sahin, supra* at 401, quoting J.W. Smith & H.B. Zobel, Rule Practice § 60.16, at 488 (1977 & Supp. 2001).

3. *Conclusion.* For the foregoing reasons, the Superior Court judge's order allowing Mukendi's motion to vacate the judgment is reversed and the original judgment for Owens is reinstated.

*So ordered.*