INGRID, GUARDIANSHIP OF, 102 Mass. App. Ct. 1

 
 GUARDIANSHIP OF INGRID (and a companion case [Note 1]).

102 Mass. App. Ct. 1
 September 16, 2022 - November 17, 2022

Court Below: Probate and Family Court, Plymouth Division
Present: Neyman, Lemire, & Englander, JJ.

 

Nos. 22-P-53 & 22-P-58.

Guardian. Probate Court, Guardian. Practice, Civil, Guardianship proceeding, Fraud, Assistance of counsel. Fraud.

A Probate and Family Court judge properly denied the grandmother's motion, filed approximately fifteen months after entry of a judgment removing her as guardian of her two granddaughters and transferring custody to the father, for relief from that judgment, where the motion was untimely, in that the grounds it raised fell squarely within the reasons provided by Mass. R. Civ. P. 60 (b) (2) (for newly discovered evidence) and Mass. R. Civ. P. 60 (b) (3) (for fraud of an adverse party), which require such motions to be made within one year of judgment. [6-7]

There was no merit to the grandmother's argument that the decree removing her as guardian of her grandchildren should be overturned based on a claim of ineffective assistance of counsel, where the claim did not constitute an "other reason justifying relief from the operation of the judgment" under Mass. R. Civ. P. 60 (b) (6), in that the grandmother did not have a fundamental liberty 

 Page 2 

interest in her relationship as guardian of the children and therefore no right to effective assistance of counsel in this civil case, and in that nothing in rule 60 (b) provides for excusing litigants from the time limitations in the rule due to their counsel's shortcomings. [7-9]

A Probate and Family Court judge did not abuse his discretion in ruling that there was no showing of fraud upon the court based on any extraordinary circumstances that would justify an extension of the filing period for the grandmother's motion to reopen the decree, where the judge could permissibly conclude that the grandmother's allegations, even if true, did not so upset the fundamentals of his prior decision as to render it manifestly unconscionable or a grave miscarriage of justice. [9-13]

Petitions filed in the Plymouth Division of the Probate and Family Court Department on May 6, 2013.

 The cases were heard by Edward G. Boyle, III, J., and a motion for relief from judgment was considered by him.

 Steven B. Rosenthal for the grandmother.

 William A. Comeau for the father.

 Dana C. Chenevert for the children.

 ENGLANDER, J. This case raises issues regarding the construction of Mass. R. Civ. P. 60, 365 Mass. 828 (1974), [Note 2] and the timeliness of a motion to reopen a judgment, where the moving party claims that the opposing party committed fraud during the proceedings below. The moving party (grandmother) seeks to overturn a decree of a Probate and Family Court judge that removed her as guardian of two of her maternal granddaughters, Ingrid and Hannah (together, the children), and transferred custody to the petitioner, the children's father (father). The decree entered in December 2019, and approximately fifteen months later, in April of 2021, the grandmother filed a motion to reopen the judgment pursuant to Mass. R. Dom. Rel. P. 60 (b). The gist of the grandmother's argument was that at trial the father had presented false testimony from his wife, whom he had recently married (wife), to the effect that the father and the wife would provide a stable home environment for the children, including specific testimony that the wife was not a drug user, and that her relationship with the father was free of domestic violence. The grandmother also argued that she had been denied effective assistance of counsel, because her appointed counsel had never investigated the history of the father's new wife, had not discovered that the wife had been 

 Page 3 

recently released from a three-year sentence for drug crimes, and hence had failed to confront the wife's falsehoods. The trial judge denied the rule 60 (b) motion without a hearing.

 For the reasons that follow, we affirm the decree and the order denying the rule 60 (b) motion. [Note 3] The rule 60 (b) motion was untimely, in that the grounds it raised fit within either rule 60 (b) (2) (newly discovered evidence) or rule 60 (b) (3) (fraud of an adverse party), and hence the grandmother was required to file the motion within one year of December 31, 2019. The grandmother's argument that the filing period should be extended due to alleged ineffective assistance of counsel is unavailing. And while it was still open to the grandmother to show "fraud upon the court," even after the one-year time limit, proof of fraud on the court requires a showing of truly extraordinary circumstances -- that is, that it would be "manifestly unconscionable" to allow the judgment to stand, Sahin v. Sahin, 435 Mass. 396, 405 (2001) -- and the judge did not abuse his discretion in ruling that such extraordinary circumstances were not demonstrated here.

 Background. The children, Ingrid and Hannah, were born in Florida in 2008. Initially they lived with both the mother and the father, but when they were eighteen months old the mother moved with them to Springfield, along with their two older half-sisters. The father remained in Florida, ostensibly because he was on probation at the time.

 The mother was diagnosed with cervical cancer shortly after she came to Massachusetts, and she eventually passed away in July of 2013, when the children were five years old. Prior to her death the mother decided that the grandmother would be a suitable guardian for the children and their half-sisters. The grandmother began caring for the children before the mother passed away, and she was appointed their guardian by decree in June of 2013.

 Prior to the mother's death, the father visited the children in Massachusetts on four occasions, the last being in December of 2012. The father testified that he was unaware of the severity of the mother's illness prior to her passing.

 When the father came to Massachusetts for the mother's funeral in July of 2013, he learned of the grandmother's guardianship, 

 Page 4 

and he filed petitions to have her removed and to obtain custody himself. See G. L. c. 190B, § 5-212 (a). The 2013 petitions were tried in early 2015 by the same judge who issued the decree now on appeal. The judge's 2015 decree found that the father was then unfit to parent the children. In particular, the judge found that the father lacked a close relationship with the children, did not have "a stable housing arrangement" or the "financial means" to care for them, and had a recent history of "violence and drug possession." The 2015 decree did provide, however, for the father's visitation with the children when the father was in Massachusetts, as well as for telephone contact several times per week.

 The father filed the instant petitions for removal in June of 2017. The gist of these petitions was that the father was by then able to provide the children with a stable home life -- he had a full-time job and had purchased a home in Florida. The father also raised concerns about the grandmother's fitness as guardian. Prior to trial in 2019, the father had married the wife, and in April of 2017 they had a child, a boy.

 Trial took place in August of 2019. The father testified, affirming that he had a support system for the children, consisting of the wife and other family members; that he was financially stable and owned a home; and that he had no police involvement since March of 2013. Prior to trial, the judge had appointed a guardian ad litem (GAL). The GAL also testified, concluding that the father was no longer unfit and that custody should be transferred. The GAL raised serious issues about the grandmother, noting among other things that she had an extensive history of involvement with the Department of Children and Families (DCF) and that she had leveled unsupported charges of sexual abuse against the father.

 Importantly for present purposes, the wife also testified. The father's counsel elicited the following on direct examination:

Q.: "In terms of your own history, do you have a history of using or abusing substances?"

A.: "No."

". . .

Q.: "And during the course of your time as [your son's] mother, have you or [the father] had any DCF involvement in Florida?"

 Page 5 

A.: "No."

". . .

Q.: "Any domestic violence in your relationship [with the father]?"

A.: "No."

Q.: "Even with you as the aggressor?"

A.: "No."

". . .

Q.: "Any police responses in relation to your relationship?"

A.: "No."

 In December of 2019, the judge issued his findings that the grandmother had not carried her burden, and that the father was currently fit to parent the children, where he had adequately demonstrated a change of circumstances from the 2015 decree. The judge also ruled that the grandmother had not demonstrated that retaining her as guardian would be in the children's best interests, finding, among other things, that there were supported allegations of physical abuse by the grandmother of another child in her care. [Note 4]

 The decree entered in December 2019, and the grandmother timely appealed. Appellate counsel was appointed approximately six months later, in June of 2020. In April of 2021, the grandmother's appellate counsel filed a rule 60 (b) motion to reopen the judgment, arguing that the wife lied about her lack of substance use and stable home life. In particular, the grandmother claimed that the wife had been sentenced to a three-year prison term for a 2013 drug-related offense. Additionally, the grandmother asserted that, approximately six months after trial, the father and the 

 Page 6 

wife had filed competing petitions for injunctions against each other in Florida, each seeking protection against alleged domestic violence. Among other things, the father's petition claimed that the wife had engaged in "drug use and erratic behavior" throughout their "entire relationship." The grandmother also contended that trial counsel was ineffective for failing to properly investigate the wife's criminal history and history of drug use. On June 1, 2021, the judge denied the motion without a hearing.

 Discussion. 1. The timeliness of the grandmother's rule 60 (b) motion. The first question before us is whether the grandmother's rule 60 (b) motion is barred because it was untimely. We conclude that it was. The structure and import of rule 60 (b) have been discussed in prior cases. The rule sets forth six "reasons" by which a party may be "relieve[d]" from a final judgment or order. Mass. R. Civ. P. 60 (b). The first five reasons for relief are (relatively) specific; the sixth is a catch-all -- "any other reason justifying relief from the operation of the judgment." Mass. R. Civ. P. 60 (b) (6). Reason number two is "newly discovered evidence"; reason number three is "fraud, . . . misrepresentation, or other misconduct of an adverse party." Mass. R. Civ. P. 60 (b) (2), (3). Rule 60 (b) specifically provides that a motion based on reasons two and three (as well as reason one) "shall be made" not more than one year after entry of the judgment being challenged. Any other rule 60 (b) motion must be made within a "reasonable time." Importantly, the case law makes clear that a motion based on the catch-all, rule 60 (b) (6), cannot be based on one of the reasons specifically set forth in rule 60 (b) (1) through (5). See Paternity of Cheryl, 434 Mass. 23, 35 (2001) (party seeking relief from judgment may not utilize rule 60 [b] [6] where "arguments are not requests for relief independent of subsections [1]-[5]").

 Finally, the rule contains one more possible escape valve as to the timing of a challenge to a judgment; it states that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." Mass. R. Civ. P. 60 (b).

 Viewed in light of the above structure (and leaving to one side the possibility of an "independent action"), it is plain that the grandmother's motion was untimely under the rule itself. Although the motion purported to be brought under rule 60 (b) (6), the grounds for the motion fall squarely within provisions 60 (b) (2) 

 Page 7 

and 60 (b) (3). The basis for the grandmother's motion was that her new counsel discovered, long after judgment, that one of the father's witnesses (his wife) provided false testimony to the court. A corollary to the grandmother's argument, perhaps, is that the father also provided false or misleading testimony, or suborned the wife's false testimony. Regardless, the "reason" the grandmother sought to overturn the decree was this newly discovered evidence, as well as the contention that her "adverse party," the father, engaged in fraud or misrepresentation. These are the reasons set forth in 60 (b) (2) and 60 (b) (3). Under rule 60 (b), such a motion had to be made within one year. See Anderson v. Anderson, 407 Mass. 251, 256-257 (1990); Artco, Inc. v. DiFruscia, 5 Mass. App. Ct. 513, 517-518 (1977).

 2. Ineffective assistance of counsel. That the grandmother's motion was untimely under rule 60 (b) does not end the matter, however, because she also advances arguments directed to avoiding the rule's timeliness provisions. Her first argument is that she received ineffective assistance of counsel, because counsel failed to discover or to confront the wife's false testimony. The grandmother appears to argue (1) that counsel's ineffective assistance qualifies as an "other reason justifying relief from the operation of the judgment" under rule 60 (b) (6), or (2) that counsel's failures are grounds for relief from the one-year time limit for motions under rule 60 (b) (2) or (3). Neither argument is persuasive.

 First, for the reasons already set forth, the claimed ineffective assistance does not state a separate, "other" reason for reopening the judgment under rule 60 (b) (6). At bottom, the "reason" that the grandmother advances for why the judgment is unjust, and should be reopened, is not that counsel was ineffective; it is the newly discovered evidence and the alleged fraud. Rule 60 (b) (6) is not an available route under those circumstances. See Sahin, 435 Mass. at 406-407; Paternity of Cheryl, 434 Mass. at 34-35.

 Nor do we think that a litigant can avoid the rule's one-year time limit by blaming a late filing on his or her counsel and claiming ineffective assistance. First of all, the grandmother does not have an enforceable "right" to effective assistance of counsel, such that a failure of counsel provides an independent basis for a judicial remedy. Guardianship removal proceedings are civil in nature. In general, "there is no right to the effective assistance of counsel in civil cases," unless a "fundamental liberty interest" is at stake. Commonwealth v. Patton, 458 Mass. 119, 124, 128 (2010). 

 Page 8 

See Commonwealth v. Ferreira, 67 Mass. App. Ct. 109, 115 (2006) (sexually dangerous persons facing civil commitment entitled to effective assistance of counsel because of "potential deprivation of liberty" [citation omitted]). The grandmother does "not [have] any liberty interest" in her relationship as guardian of the children. Guardianship of K.N., 476 Mass. 762, 765 (2017). The only fundamental interests implicated in the contest before the judge were the father's and the children's. See Department of Pub. Welfare v. J.K.B., 379 Mass. 1, 3 (1979) ("The interest of parents in their relationship with their children has been deemed fundamental, and is constitutionally protected"). The grandmother therefore does not possess a stand-alone claim for ineffective assistance. [Note 5]

 Second, and in any event, there is nothing in rule 60 (b) that provides for excusing litigants from untimely motions due to their counsel's shortcomings. The rule is direct and clear: motions based on new evidence or fraud of an adversary "shall be made" within one year. The rule does not separate clients from their attorneys in calculating the timeliness of a motion. In this regard, the decision in Owens v. Mukendi, 448 Mass. 66 (2006), while not directly applicable, is instructive. In Owens, the defendant filed a motion to reopen a default judgment against him because the plaintiff -- the defendant's lawyer -- had actively misled the defendant client as to whether the lawyer would ever seek to enforce that judgment. Id. at 68-71. The court in Owens was willing to treat the defendant's rule 60 (b) motion as being subject to the "reasonable time" limit of rule 60 (b) (6), rather than the one-year limit of rule 60 (b) (3). See Owens, supra at 73-74. Nevertheless, the court concluded that the defendant's delay of more than three years rendered his motion untimely. Id. at 74-77. The delay was unreasonable, according to the court, because the defendant was or should have been aware of facts contradicting his lawyer's assurances far earlier -- e.g., that the attorney had attached the defendant's funds, obtained a notice of execution, and said he would pursue collection. See id.

 Owens teaches that a litigant generally cannot blame a tardy 

 Page 9 

rule 60 (b) motion on her attorney's conduct. This can hold true even where the attorney's conduct goes beyond negligence, as the grandmother claims here, and falls into the category of active deception and breach of fiduciary duty. Here, as in Owens, the grandmother herself could have discovered at least some of the facts on which her motion was based, even before the decree entered. The wife's criminal history was an available public record. That the grandmother's attorney also failed to discover those facts does not excuse her from the time limitations of rule 60 (b).

 3. The claim of "fraud on the court." Finally, the grandmother also argues that the circumstances here are so "extraordinary" that the judgment must be vacated. As noted above, rule 60 (b) does provide that, independent of a motion under the rule, a court retains the power to "set aside a judgment for fraud upon the court." [Note 6] The cases make clear, however, that the court's residual power is quite limited. The judge did not abuse his discretion in ruling that the circumstances here would not justify vacating the judgment based on fraud on the court or like grounds.

 We begin by defining the circumstances that can justify reopening a judgment even after the time periods in rule 60 (b) have run. In Paternity of Cheryl, the Supreme Judicial Court stated that

"[a] 'fraud on the court' occurs where 'it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or 

 Page 10 

unfairly hampering the presentation of the opposing party's claim or defense.'"

Paternity of Cheryl, 434 Mass. at 35, quoting Rockdale Mgt. Co. v. Shawmut Bank, N.A., 418 Mass. 596, 598 (1994). "Examples are bribery of judges, employment of counsel to 'influence' the court, bribery of the jury, and the involvement of an attorney (an officer of the court) in the perpetration of fraud." Paternity of Cheryl, supra at 36, quoting MacDonald v. MacDonald, 407 Mass. 196, 202 (1990).

 Thus, the court has set a high bar before a judgment can be reopened after rule 60 (b)'s time periods have run. This high bar is an expression of "the system's important interest in finality." Owens, 448 Mass. at 76. To that end, the court has also set parameters for what does not constitute fraud on the court. Proof of conduct that amounts to common-law fraud -- that is, a knowing, materially false statement of fact that induces reliance thereon -- is not sufficient. See Sahin, 435 Mass. at 401-403. Nor is perjury of a witness likely to be sufficient, even where the perjury "relat[es] to [a] central issue in the case." Id. at 402, citing Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 49 (1st Cir. 1995). What is required is something extraordinary -- a showing that allowing the judgment to stand is "manifestly unconscionable." See Sahin, supra.

 In evaluating where the bar is set, two cases in particular help to define what is not sufficient to allow an otherwise untimely motion to reopen. In Paternity of Cheryl, the court held that an adjudication of paternity could not be reopened, five to six years after it entered, even where the person who had been adjudicated the father claimed that the mother had falsely, and knowingly, led him to believe he was the biological father. Paternity of Cheryl, 434 Mass. at 35-36. And in Sahin, the court concluded that a divorce judgment could not be reopened, almost three years later, where the husband's business, which was part of the marital estate, turned out to be worth hundreds of millions of dollars more than the husband and his experts had represented at trial. Sahin, 435 Mass. at 404-405. Both cases endorse the principles that allegations of fraud, or failures to disclose, are not sufficient, particularly where the moving party was aware of facts, or in a position to discover the true facts, before or shortly after the judgment entered. See id. at 405 (noting availability of purportedly undisclosed evidence during earlier proceedings); Paternity 

 Page 11 

of Cheryl, supra at 32-33 ("father failed to challenge the paternity judgment at the earliest reasonable opportunity, in the face of what he acknowledges was mounting evidence that he might not be [the] biological father").

 Two other cases help to define what can be sufficient to reopen a judgment years after it entered. In Mt. Ivy Press, L.P. v. Defonseca, 78 Mass. App. Ct. 340 (2010), this court concluded that a judgment could be vacated, six years after it entered, after it was discovered that Defonseca had concocted a completely false story about being a Holocaust survivor and had maintained that story throughout litigation that garnered her a judgment of more than $20 million. Id. at 341, 348-351. This court stated:

"Although it is true that perjury, standing alone, generally does not support relief under rule 60(b)(6), [Note 7] Defonseca's alleged conduct goes well beyond that. Defonseca's entire case, and the manner in which she procured the judgment, was buttressed on what is now admitted to be a lie. . . . Her testimony at trial reiterated, and reinforced, her sympathetic but ultimately false tale."

Id. at 348-349.

 Similarly, in Owens, 448 Mass. at 72-74, the Supreme Judicial Court determined that the plaintiff lawyer's behavior would have been sufficiently unconscionable to allow a judgment to be reopened more than three years after it entered, pursuant to rule 60 (b) (6), where the lawyer sued his client, obtained a default judgment, and then convinced the client not to appear and defend at the assessment of damages hearing. The court concluded that the one-year time limit applicable to challenges based on rule 60 (b) (3) did not apply, because "the seriousness of th[e] misconduct [arose] principally out of the rules and obligations imposed on [the lawyer] as [his client]'s attorney, rather than out of those otherwise applicable to an adverse party in litigation" such that "relief under rule 60(b)(6)" was justified. Owens, supra at 74. As noted, however, the Owens court ultimately denied rule 60 (b) (6) relief, on the grounds that the defendant had failed to file his motion within a reasonable time after becoming aware of the lawyer's conduct. Id. at 76-77.

 Page 12 

 Applying the above standards to the facts here, we are satisfied that the judge did not abuse his discretion in declining to reopen the decree. In so ruling, we do not minimize the misconduct at issue. Assuming that the grandmother's allegations are true (and before us, the father does not contest them), the wife knowingly gave false testimony, at least regarding her history as a drug user and perhaps also as to her relationship with the father and the existence of domestic violence between them. The testimony was plainly material, as it reflected on the stability of the home that the father could provide for the children. The father had been determined unfit by the same judge only a few years before, in part because the father had not shown he could provide a stable home life, and the wife's evidence was directed to overcoming that prior finding. And although the judge did not conduct an evidentiary hearing here, on the record presented we cannot rule out that the father knowingly suborned and participated in the wife's false testimony. As noted above, the father's subsequent petition for protection against domestic violence in Florida stated that the wife had engaged in heavy drug use and erratic behavior throughout their relationship.

 The question raised by the grandmother's motion, however, is not whether the wife or the father committed misconduct, even misconduct amounting to fraud, but rather whether their misconduct led to a judgment that was "manifestly unconscionable" or a "grave miscarriage of justice." Sahin, 435 Mass. at 402. In this regard, the central question before the judge was whether the father, not the wife, was unfit. See Guardianship of Kelvin, 94 Mass. App. Ct. 448, 453-454 (2018). In evaluating this question, as of trial in 2019 the judge already had considerable experience with the father and his history, including presiding over an earlier trial and a multitude of interlocutory disputes about visitation. The testimony of the wife, while relevant, was not central to a decision about the father's fitness. In addition, the applicable law directs that if the father was in fact fit, the father's fundamental right to act as a parent was paramount and must be honored. See id. at 453, citing Guardianship of Estelle, 70 Mass. App. Ct. 575, 578 (2007) ("custody of child belongs to parent unless parent is unfit"). Furthermore, in evaluating whether the grandmother was a suitable guardian, the judge needed to consider the best interests of the children, Guardianship of Kelvin, supra at 453-454, and as to that issue, the judge had before him evidence that the grandmother had engaged in serious misconduct of her own that reflected 

 Page 13 

poorly on her fitness, including accusing the father of sexual abuse when there was no evidence of same.

 Based on all of this history the judge ruled, consistent with the GAL report, that custody should be transferred to the father. The judge did not err in denying the grandmother's motion, made fifteen months after the decree issued, which sought to reopen his decree based on newly discovered evidence that the wife apparently had perjured herself as to her own history. The judge could permissibly conclude that the grandmother's allegations, even if true, did not so upset the fundamentals of his prior decision as to render it a grave miscarriage of justice.

Decree affirmed.

Order denying motion for relief from judgment affirmed.

FOOTNOTES
[Note 1] Guardianship of Hannah. The children's names are pseudonyms. 

[Note 2] The motion before us on appeal was decided under Mass. R. Dom. Rel. P. 60; that rule, however, contains the same language as, and is construed identically to, Mass. R. Civ. P. 60. See Sahin v. Sahin, 435 Mass. 396 , 398 n.4 (2001). 

[Note 3] The grandmother appealed both the decree and the denial of her rule 60 (b) motion. The arguments in the parties' briefs, however, are directed solely to the denial of her motion. 

[Note 4] At the time of trial, the children indicated that they wished to remain with the grandmother. On appeal, however, the children (now fourteen years old) have stated (through counsel) that they wish to remain with the father in Florida. See Care & Protection of Vick, 89 Mass. App. Ct. 704, 710 (2016) (judge should consider wishes of child in making custodial determinations, and those wishes, although not dispositive, are entitled to weight in custody proceedings). 

 We note that we have jurisdiction over the present appeal, where Massachusetts was "the home state of the child[ren] on the commencement of the custody proceeding," even though the children now reside in Florida. See G. L. c. 209B, § 2 (a) (1).

[Note 5] The Supreme Judicial Court has held that certain statutory grants of counsel may also be the basis for ineffective assistance of counsel claims. See, e.g., Care & Protection of Stephen, 401 Mass. 144, 149 (1987). In the case of guardians such as the grandmother, G. L. c. 190B, § 5-212 (d), does now provide for a right to counsel in certain circumstances. But that portion of the statute was not in effect until 2021, after the 2019 trial in this case. See St. 2020, c. 339. We therefore need not address whether that statute now provides guardians the right to the effective assistance of counsel in removal proceedings. 

[Note 6] Rule 60 (b) states that the court may "entertain an independent action" for purposes of establishing such fraud. Although the grandmother did not institute an "independent action" here, we do not ground our decision on that procedural basis. The grandmother's rule 60 (b) motion and accompanying papers adequately set forth arguments based not only on rule 60 (b) (6), but also on an alleged "extraordinary" fraud, such that it is fair to treat those arguments as asserting fraud on the court. We accordingly address the issue on the merits. 

 We note that the case law in this area regularly discusses both rule 60 (b) (6) and concepts of "fraud on the court" as separate bases for reopening a judgment. At least one case, Sahin, appears to discuss a third ground -- an "independent action" not based on fraud on the court -- although the existence and source of this third ground is not clear, and in any event the standard that the court in Sahin discusses for this possible third ground does not appear to differ materially from the case law discussing fraud on the court. See Sahin, 435 Mass. at 402-403 (independent action relief available only where "enforcement of judgment would be manifestly unconscionable" [quotation and citation omitted]).

[Note 7] Although the courts in both Mt. Ivy Press, L.P. and Owens, discussed infra, cast their rulings at least in part on rule 60 (b) (6), the facts are nevertheless instructive as to what may constitute fraud on the court. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.