NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-417

G.M.

vs.

M.S.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In February 2019, after hearing, a Probate and Family Court judge approved the parties' agreement to settle the father's child support obligation and entered a partial judgment of divorce nisi incorporating and partially merging that agreement.[1] The agreement was reached after a mediation wherein the mother was represented by an attorney and the father was not.  In addition to paying the mother a weekly sum that was higher than the presumptive amount under the Child Support Guidelines (guidelines), the parties agreed that the father would pay twenty-three percent of his future performance bonuses as

---

[1] The agreement also settled issues of health insurance, past and present alimony, and property division, with only those provisions relating to the child merging with the partial judgment.  Left for trial were issues of custody, life insurance, and future alimony.

additional child support (bonus provision).  The mother and the father attested they were "aware of [the] opportunity to obtain legal advice by counsel of [their] own selection, and that each believes this Agreement to be fair, just and reasonable, and each signs this Agreement freely and voluntarily."

Both parties were represented by attorneys for trial on the remaining issues, which took place before the same judge, in January and November of 2020 and February and April of 2021.  On the February date, the father's attorney asserted that the bonus provision was an issue for trial, but the judge disagreed and instructed him to file a motion under Mass. R. Dom. Rel. P. 60 (b) (rule 60 [b]) if he wanted to challenge the partial judgment.  The attorney filed such a motion in March 2021 that was supported by the father's affidavit and did not include a request for hearing.  In July 2021, the judge denied the rule 60 (b) motion by crossing out the word "allowed" in a preprinted endorsement and circling the word "denied."  He also entered a supplemental judgment of divorce, resolving all remaining issues except future alimony, which "remain[ed] open."  The judge awarded the mother sole legal and primary physical custody of the parties' child, awarded the father visitation and contact privileges with the child, modified a District Court G. L. c. 209A order to allow the father to contact the mother using a particular application so he could exercise those privileges,

and ordered the father to maintain life insurance payable to the mother to secure his child support obligation.

Once again acting pro se, the father appealed and claims that the judge erred by not awarding joint legal custody, by leaving future alimony open, by ordering only the father to maintain life insurance, and by denying the rule 60 (b) motion without a hearing or making findings.[2]  We affirm.

Discussion.  1.  Custody.  Legal custody means "the right and responsibility to make major decisions regarding the child's welfare including matters of education, medical care and emotional, moral and religious development."  G. L. c. 208, § 31.  "[T]he happiness and welfare of the children" is the primary consideration for whether legal custody should be "sole" or "shared."  Id.  Determining which parent will promote the child's best interests and whether joint custody is appropriate are subjects peculiarly within the discretion of the judge, whose findings must stand unless they are plainly wrong or

_____

[2] As specified in the notice of appeal appearing in the trial court assembly, the father appears to have appealed only from the denial of his rule 60 (b) motion and not from the supplemental judgment in which the judge ruled on issues of custody, alimony and life insurance.  Although the father's notice of appeal of his rule 60 (b) motion appears on the trial court docket, there are indications in the record that other notices may not have entered.  Given the uncertainties with respect to the docket and the lack of any objection from the mother, and as both parties have fully briefed the issues, we address them.  See Fazio v. Fazio, 91 Mass. App. Ct. 82, 84 n.7 (2017).

clearly erroneous. D.B. v. J.B., 97 Mass. App. Ct. 170, 181 (2020), and cases cited. "Joint custody may be awarded, however, only if . . . the court finds the parents have demonstrated an ability to cooperate in raising the child." Smith v. McDonald, 458 Mass. 540, 545 (2010). See Mason v. Coleman, 447 Mass. 177, 182 (2006).

The father claims that the judge abused his discretion in awarding the mother sole legal custody based on contradictory findings about the parties' inability to communicate and without considering the father's testimony, the child's best interests, or lesser alternatives such as an order requiring the parties to communicate. We are not persuaded.

It is true that the judge found the parties had "some ability to communicate" using the notebook but also that "[t]he evidence at trial clearly demonstrated that the parties are unable to effectively communicate" because the father viewed himself as the final decision maker and was not tolerant of the mother's opinions. These findings are "not internally inconsistent or unsupported by the evidence," Mason, 447 Mass. at 186-187, but are based on the judge's weighing of text messages and emails he found "telling and disturbing"; his assessment of the testimony and demeanor of the mother and father and the testimony and report of a guardian ad litem (GAL); and his decision to "credit[] the parties' testimony as

4

to the challenges in communicating about [the child] through a notebook."  We do not agree with the father that the judge "cherry-picked" the evidence to reach the conclusions he did.  Plainly he considered the father's testimony, because he did not credit portions of it but did credit others, finding the father to be "a loving and committed parent."  Contrast Ventrice v. Ventrice, 87 Mass. App. Ct. 190, 196 (2015).  And he was not required to adopt the GAL's recommendations, a point the father acknowledges.  D.B., 97 Mass. App. Ct. at 182.  Finally, where the father offered no evidence "equating a personality disorder to Alzheimer's" disease, the GAL's failure to assess the mother for a personality disorder because her father was diagnosed with that disease was immaterial.

As there was ample record support for the judge's view, we defer to his evaluation of the evidence, Ventrice, 87 Mass. App. Ct. at 195, which showed that "[t]he parties argued frequently and had communication issues throughout the marriage," culminating in a G. L. c. 209A order protecting the mother from the father's abuse that was extended several times.[3]  After each

---

[3] As required by G. L. c. 208, § 31A, and Custody of Vaughn, 422 Mass. 590, 599-600 (1996), the judge acknowledged the evidence of domestic violence, credited the mother's allegations against the father, but found that the father was "a loving and committed parent."  Though legal custody was awarded to the mother, the judge entered a shared parenting plan as requested by both parties.  We infer from these findings that (assuming the court found the mother's allegations of abuse to constitute

extension, the father filed a motion to vacate that was denied. The father disputes the 209A order's validity here despite saying at trial that he was "not contesting that," and even though he (1) did not include the order in the record, and (2) never appealed the 209A order, the extensions, or the denials of his motions to vacate. Where the father "had the right to be heard in this court on the issue whether [each of those] decision[s] was proper" but chose not to exercise it, he may not relitigate the issue in this appeal. C.R.S. v. J.M.S., 92 Mass. App. Ct. 561, 565 (2017).

In light of the 209A order and the father's contention in his proposed findings and rationale that "[t]he [mother] craves total control, cannot tolerate differences, nor communicate effectively, nor take accountability for shortcomings, or empathize with others," the judge acted within discretion in concluding that neither an order for joint custody nor one requiring the parties to communicate would be appropriate. Smith, 458 Mass. at 553. See Rolde v. Rolde, 12 Mass. App. Ct.

---

a pattern or to include a serious incident) the father successfully rebutted the presumption that it would not be in the best interest of the child to be placed in the father's custody. See Malachi M. v. Quintina Q., 483 Mass. 725, 738-739 (2019). We note, however, that the findings should be made explicit. See id. at 739-740 ("moving forward, when parties present evidence of abuse, judges should explicitly state on the record that they have considered whether the parties have met the preponderance standard for the presumption to apply and, if so, whether the abusive parent has rebutted the presumption").

398, 405 (1981) (joint custody requires parents have some degree of respect for one another and willingness and ability to work together on major decisions).  We are confident that the judge applied the correct standard in reaching this conclusion, from his reference to "the child's best interest" and his statement that, "In legal custody determinations, like physical custody determinations, the guiding principle is the best interests of the children."  That the judge "ultimately reached a conclusion that is contrary to the father's own view of the pertinent facts and circumstances" does not mean there was an error of law or abuse of discretion.  J.S. v. C.C., 454 Mass. 652, 659 (2009).  We have carefully reviewed the record, and the judge's decision to award the mother sole legal custody did not fall outside the range of reasonable alternatives.  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

2.  Future alimony.  The father claims that the judge abused his discretion by leaving future alimony open where the parties agreed that the issue would be decided at trial.  The short answer to this is that the judge did decide the issue at trial and opted to leave it open.  Neither the Alimony Reform Act (act) nor our case law prohibits that course of action.  See Vedensky v. Vedensky, 86 Mass. App. Ct. 768, 772 (2014) (judgment nisi addressed issue of future alimony by reserving it).  See also Snow v. Snow, 476 Mass. 425, 425 (2017) (act's

7

durational limits and wife's failure to pursue alimony during divorce did not preclude her from seeking it after more than four years); Cherrington v. Cherrington, 404 Mass. 267, 270 n.6 (1989) (alimony not waived for failure to request it during divorce, and judge not precluded from awarding it in future if warranted); Clement v. Owens-Clement, 98 Mass. App. Ct. 632, 640 (2020) ("Legislature did not intend to prohibit a judge from deviating from the act's presumptive durational limits simply because the modification complaint was filed after the presumptive durational period had expired"). The father's challenge to the appropriateness of alimony "[a]t this point" is premature where the initial award did not require him to pay alimony. See Clement, supra at 636. In the future, if the mother seeks alimony, it will be her burden to establish that deviation from the durational limits is necessary in the interests of justice. G. L. c. 208, §§ 49 (b), 53 (e). "This is not a hollow test, nor is it an easy burden to meet, . . . and it requires the judge to consider both parties' circumstances at the time that deviation is sought" along with many other factors, including the passage of time. Clement, supra at 640.

3. Life insurance. The father is correct that both parents have an equal obligation to support their child. Department of Revenue v. Mason M., 439 Mass. 665, 675 (2003),

8

and cases cited. The parties agreed, however, to a partial judgment imposing an obligation on the father alone. Absent a judgment requiring the mother to pay support, there was nothing for a life insurance policy to secure. See G. L. c. 208, § 36; Braun v. Braun, 68 Mass. App. Ct. 846, 856-857 (2007). Thus, the contention that both parties should have been ordered to maintain life insurance misses the mark. The judge found that the mother relied on the father's child support payments to meet the child's needs and would be unable to meet the child's needs without the support. The father does not challenge that finding. Where the father proposed that $250,000 was an appropriate amount to secure his obligation and the mother proposed $300,000, the judge's finding that $300,000 was reasonable was not clearly erroneous. See Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 203-204 (1986); Mass. R. Dom. Rel. P. 52 (a), functionally identical to Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996). There was no abuse of the judge's "broad discretion." Pare v. Pare, 409 Mass. 292, 300 (1991).

4. Rule 60 (b) motion. Identical to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), rule 60 (b) allows for relief from a judgment because of (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4)

9

the judgment is void; (5) satisfaction of the judgment or other reasons making it "no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief."  Subsection (b) (6) is a "catchall provision" that applies only in "extraordinary circumstances" where relief is "justified by some reason other than those set forth in rule 60 (b) (1)-(5)."  Sahin v. Sahin, 435 Mass. 396, 406-407 (2001).  A rule 60 (b) motion "shall be made within a reasonable time" and, for reasons (1) and (3), "not more than one year" after judgment entered.  Mass. R. Dom. Rel. P. 60 (b).  What constitutes "a reasonable time" to file a motion for reason (6), and whether relief is justified under that subsection, are matters "addressed solely to the judge's discretion" (quotation omitted).  Owens v. Mukendi, 448 Mass. 66, 72 (2006).

The father asserted that relief was justified because he agreed to the bonus provision on the "mistaken belief" that the bonus income was includable when calculating his child support obligation, which belief he formed based on a "misrepresentation" of the law by the mother's counsel during the negotiation process.  Setting aside that "bonus income is specifically included in th[e] [guidelines'] definition" of income, Zaleski v. Zaleski, 469 Mass. 230, 243 (2014), "[t]hese are the reasons set forth in 60 (b) ([1]) and 60 (b) (3)."  Guardianship of Ingrid, 102 Mass. App. Ct. 1, 7 (2022).  The

10

father concedes as much by maintaining that he was entitled to relief under those subsections even though only (b) (6) was identified in the motion. "Under rule 60 (b), such a motion had to be made within one year." Id. The father filed his motion in March 2021, more than two years after the partial judgment entered. To the extent the father sought relief under subsections (b) (1) or (b) (3), it was too late. Sahin, 435 Mass. at 400. Guardianship of Ingrid, supra at 6-7.

As "the case law makes clear," Guardianship of Ingrid, 102 Mass. App. Ct. at 6, the father could not prevail under rule 60 (b) (6) if his proffered reasons for relief fell within subsections (b) (1) and (b) (3) unless he showed "something more . . . giving rise to extraordinary circumstances." Owens, 448 Mass. at 73 (quotation omitted). See Paternity of Cheryl, 434 Mass. 23, 35 (2001). He did not. Having had the opportunity to obtain legal advice by counsel of his choosing, the father "freely and voluntarily" agreed that a weekly amount higher than his presumptive obligation under the guidelines, plus twenty-three percent of future bonuses, was "fair, just and reasonable" support for his child. The judge likely recognized that the father's subsequent desire to retreat from that agreement was not "extraordinary circumstances," Innis v. Innis, 35 Mass. App. Ct. 115, 118 (1993), and that, even if it was, where the father knew he was paying more than the presumptive amount and waited

11

for two years to raise that perceived injustice, only doing so because the judge refused to reconsider the issue midtrial, the rule 60 (b) (6) motion "was filed far too late, and beyond the limits that discretion might otherwise permit."  Owens, 448 Mass. at 77.  Accordingly, it was not made "within a reasonable time."  Mass. R. Dom. Rel P. 60 (b).  See Owens, supra at 76-77, and cases cited.  Since no evidence could change this outcome, the judge did not err by declining to hold a hearing no one requested.  Findings were "unnecessary."  Mass. R. Dom. Rel. P. 52 (a).

Supplemental judgment of divorce, entered August 30, 2021, affirmed.

Order denying motion for relief from partial judgment nisi, entered August 30, 2021, affirmed.

By the Court (Sullivan, Desmond & Singh, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered: June 7, 2023.

---

[4] The panelists are listed in order of seniority.