NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1992                                    Appeals Court

DIANE LYNN VENTRICE vs. MICHAEL CHARLES VENTRICE.

No. 13-P-1992.

Hampden.     December 2, 2014. - March 19, 2015.

Present:  Rapoza, C.J., Vuono, & Meade, JJ.

Constitutional Law, Access to court proceedings.  Divorce and
    Separation, Child custody.  Minor, Custody.  Parent and
    Child, Custody, Custody.

Complaint for divorce filed in the Hampden Division of the
Probate and Family Court Department on December 28, 2010.

The case was heard by Anne M. Geoffrion, J.

William M. Driscoll for the husband.
Bradford B. Moir for the wife.

MEADE, J.  After a trial and subsequent hearing in the

Probate and Family Court, the defendant, Michael Charles

Ventrice, appeals from certain provisions of an amended divorce

judgment nisi.  In particular, Michael appeals the provision

ordering that he and the plaintiff, his former spouse Diane Lynn

Ventrice, shall engage in and pay for court-directed mediation

before either may file any subsequent action in the Probate and Family Court.[1]  Michael also contends that the judge abused her discretion by awarding Diane sole legal and physical custody of three of the couple's four children.[2]  For the reasons that follow, we vacate the amended divorce judgment and remand to the Probate and Family Court for additional proceedings.[3]

Background.  We recite facts found by the judge, and accept as true other essential uncontroverted facts from the record.  Miller v. Miller, 448 Mass. 320, 321 (2007).  Michael and Diane Ventrice were married in June, 2001.  They had four children, who, as of the time of trial in May, 2012, were between the ages of twelve and five:  Linda, the oldest, followed by Susan, Agatha, and Matthew, who was youngest.[4,5]

During their marriage, Michael and Diane owned and operated a business known as Big Adventures, a children's play center, in

---

[1] We refer to the parties by their first names to avoid confusion.

[2] Michael was given sole legal and physical custody of the couple's oldest child.

[3] Neither party appeals the judgment of divorce itself, or the court's equitable division of the marital estate.

[4] We use pseudonyms for all the children throughout the opinion.

[5] Linda, Agatha, and Matthew had each been diagnosed with and were taking prescription medication for attention deficit hyperactivity disorder.  Susan was taking medication for exercise-induced asthma.

Westfield.  The couple alternated working at Big Adventures and staying home with the children.  Michael was the primary caretaker for about four years, while Diane worked extended hours at the business.[6]  At all other times, Diane was the primary caregiver for the children.  Michael performed construction and snow-plowing jobs on the side for extra money, while Diane was working as a security assistant.

Diane filed for divorce in December, 2010.  It was clear from the record and undisputed that the marriage was irretrievably broken.  During the pendency of the divorce, Diane began a relationship with Michael Clegg, a previously convicted sex offender.  Diane asserted that Clegg was supportive of her and her children.  However, because Clegg had not yet undergone a psychosexual evaluation, the court ordered that Clegg have no contact with the minor children.  Diane repeatedly violated this order, seemingly without concern.[7]

By agreement of the parties, the court appointed a guardian ad litem (GAL).  The GAL conducted numerous interviews with both parties, their relatives, friends and associates, the four children (individually and as a group), social workers from the

---

[6] Diane told the guardian ad litem that when she returned home during this period, she would encounter the children still hungry and Michael asleep.

[7] A nonscientific evaluation of Clegg was completed after trial.  The parties agreed that Clegg was determined to have no residual issues.

Department of Children and Families (DCF), school counsellors, therapists, and others who were involved with the family. In her report, issued in December, 2011, and supplemented in May, 2012, and March, 2013, the GAL recommended that Michael be given sole legal and physical custody of all four children. In her opinion, Michael was then presenting as "the stable parent" and was "more easily accessible and [the] more cooperative" parent with whom to work. The GAL noted that the children were calmer and more stable when they were with Michael, and that his house was "clean and orderly." On the other hand, the GAL described Diane's home as "unorganized and chaotic."

The case proceeded to trial in May, 2012, and a judgment of divorce nisi entered on June 14, 2013.[8] The judgment contained a provision stating that Michael and Diane must attempt to reach an agreement regarding compliance with the judgment, and that, "[i]f the parties are unable to reach an agreement, the parties shall engage the services of a mediator before either may file an action in this [c]ourt. The costs associated with mediation shall be shared equally by the parties, unless otherwise reallocated by the mediator." Finally, finding the parties unable to co-parent, the judge awarded sole legal and physical custody of the oldest child, Linda, to Michael, with sole legal

---

[8] The amended judgment, which altered certain provisions not contested on appeal, was issued on July 12, 2013, nunc pro tunc to June 14, 2013.

and physical custody of the remaining three children going to Diane.[9]  Michael appeals both the order to mediate at the parties' expense, as well as the custody determination.

Discussion.  a.  Free access to courts.  Michael challenges the provision in the amended divorce judgment that requires the parties to engage in out-of-court mediation, at their own expense, before either may file an action in the Probate and Family Court.[10]  He claims that the judge's order violates his right of free access to the courts under art. 11 of the Declaration of Rights of the Massachusetts Constitution (Declaration of Rights).[11]  We agree.

Article 11 of the Declaration of Rights guarantees each person the right "to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."  The free access to the courts guaranteed to each citizen by art. 11 requires that all cases be decided by a judge, and

---

[9] Regarding Linda, the judge found that she had been living with Michael and that this arrangement was "currently meeting her needs."  As to Susan, Agatha, and Matthew, the judge found that Diane had been "the primary custodian for all of their lives and this arrangement is serving their needs."

[10] Diane does not take a position on this issue on appeal.

[11] Michael alleges that this provision violates the First Amendment to the United States Constitution, as well as Federal equal protection and due process guarantees.  However, because we award the sought relief solely under State constitutional law, we need not, and do not, decide Michael's Federal claims.

that litigants need not "purchase" access to justice.  See <u>Bower</u> v. <u>Bournay-Bower</u>, 469 Mass. 690, 703 n.12 (2014) (<u>Bower</u>); <u>Graizzaro</u> v. <u>Graizzaro</u>, 36 Mass. App. Ct. 911, 912 (1994) (<u>Graizzaro</u>); <u>Boddie</u> v. <u>Connecticut</u>, 401 U.S. 371, 380-382 (1971) (<u>Boddie</u>).

The recent case of <u>Bower</u>, <u>supra</u>, is instructive.[12]  In <u>Bower</u>, the Supreme Judicial Court vacated an order of the Probate and Family Court that appointed a parent coordinator over the objection of one parent, and granted that coordinator binding authority to resolve conflicts between the parents.  <u>Id</u>. at 709.  In that case, as here, the judge delegated her decision-making authority to a court-appointed official, doing so over the objection of at least one party.  <u>Id</u>. at 693.  While recognizing that courts have the inherent power to appoint dispute resolution officials in appropriate circumstances, the Supreme Judicial Court stressed that it is the judge -- and, absent agreement of the parties, <u>only</u> the judge -- who shall make the final, binding decision in each case.  <u>Id</u>. at 701-709. <u>Bower</u> also states that any preconditions that require the use of costly services prior to filing a court action may implicate art. 11 of the Declaration of Rights.  See <u>id</u>. at 703 n.12.

---

[12] The judge did not have the benefit of <u>Bower</u> when she decided this matter.

Here, the amended judgment orders that "the parties shall engage the services of a mediator before either may file an action in this [c]ourt," and "[t]he costs associated with mediation shall be shared equally by the parties, unless otherwise reallocated by the mediator."[13]  Michael objected to that provision and brought a timely motion to amend the judgment, which was denied in part on those grounds but allowed in part on other grounds not challenged on appeal.  The effect of the judge's order prevents the parties from bringing a subsequent action in the Probate and Family Court until they have borne the costs of mediation.[14]  This is an unconstitutional burden to the parties because it delays an objecting party's right to file a complaint in our courts, and also because it forces the parties to bear a likely costly expense for court-ordered mediation services.  In particular, this precondition could discourage or even prevent one of the parties from seeking to modify the divorce judgment if a material change in circumstances or the best interests of the parties' four

_____

[13] Contempt complaints were excluded from this provision, and thus permitted to be filed.

[14] Rule 2 of the Uniform Rules on Dispute Resolution, S.J.C. Rule 1:18, as amended, 442 Mass. 1301 (2004) (Uniform Rules), defines "mediation" as "a voluntary, confidential process in which a neutral is invited or accepted by disputing parties to assist them in identifying and discussing issues of mutual concern, exploring various solutions, and developing a settlement mutually acceptable to the disputing parties" (emphasis supplied).

children so required.  See G. L. c. 208, § 28.  Because the Probate and Family Court has exclusive jurisdiction in this area, see G. L. c. 215, § 3, the Ventrices would have no alternative forum in which to pursue such a claim.  In this light, we conclude that the amended judgment does precisely what art. 11 of the Declaration of Rights forbids, i.e., it chills the Ventrices' right to freely petition the courts.  See Bower, supra at 702-703.  See also Boddie, supra at 380-382 (cost requirement may deprive certain litigants of procedural due process); Gustin v. Gustin, 420 Mass. 854, 857 (1995) (Gustin) ("a judge typically cannot order parties to a dispute to submit that dispute to binding arbitration unless the parties agree to do so") Graizzaro, supra at 912 ("A court may appropriately urge settlement on the parties but may not refuse them access to a judicial forum to resolve their justiciable disputes").

Accordingly, the amended judgment must be vacated and the case remanded to the Probate and Family Court, for further proceedings.  On remand, the judge may in her discretion refer the parties to court-appointed dispute resolution in accordance with the Uniform Rules on Dispute Resolution,[15] but may not

---

[15] The Uniform Rules govern dispute resolution in the Probate and Family Court.  They require, among other things, that court-ordered dispute resolution services be at no cost to the parties, that the provider of such services be approved by the Chief Justice of the Trial Court, and that the court inform

condition the right of either party to petition the court on participation in such a process. Moreover, even if the parties participate in court-ordered dispute resolution, absent their agreement, any court-appointed official may only recommend a disposition to the judge, who retains a nondelegable duty to make the final and binding resolution of the case. See Gustin, supra at 857-858 ("The judge may not delegate this duty"). In addition, the judge may not foreclose either party's right to commence a nonfrivolous action, nor may she order the parties to bear the cost of any mandatory dispute resolution services.

b. Custody of the children. Michael also challenges the judge's award to Diane of custody of three of the couple's four children. He claims that the judge failed to evaluate relevant record evidence that supported granting custody to him. We agree and order that the decision be vacated and remanded for additional findings.

When reviewing custody awards, we uphold the judge's factual findings absent clear error. Mason v. Coleman, 447 Mass. 177, 186 (2006). "Unless there is no basis in the record for the judge's decision, we defer to the judge's evaluation of the evidence presented at trial." Bush v. Bush, 402 Mass. 406, 411 (1988). The judge's findings must, however, "add up to

_____

the parties that they are not required to settle the case while participating in such services. See Uniform Rule 4(c).

sufficient support for [her] custody order." Prenaveau v. Prenaveau, 81 Mass. App. Ct. 479, 493 (2012).

We recognize that "[t]he decision of which parent will promote a child's best interests is a subject peculiarly within the discretion of the judge." Ardizoni v. Raymond, 40 Mass. App. Ct. 734, 738 (1996) (Ardizoni), quoting from Bak v. Bak, 24 Mass. App. Ct. 608, 616 (1987). "Discretion allows the judge, when determining the best interests of children, to consider the widest range of permissible evidence, including the reports and testimony of a court appointed investigator or G.A.L., evidence of the history of the relationship between the child and each parent, evidence of each parent's present home environment and over-all fitness to further the child's best interests, and the judge's own impressions upon interviewing the child privately in chambers." Ibid.

In the present case, the judge ruled in Diane's favor, but apparently did so without considering evidence favoring Michael.[16] The judge's memorandum only observes that Diane "has

---

[16] The judge did consider Michael's shortcomings, and properly so. She noted that Michael had referred to Diane's boyfriend as a "child rapist" and denigrated Diane on several occasions in front of the children. We discern no error in those findings, which were well-supported by the record. We also do not take issue with the judge's finding that neither parent has prioritized the children's interests, and the rather obvious conclusion that Michael and Diane are unable to co-parent. As the judge correctly noted, "both parents have done these children a terrible disservice" (quoting the GAL report).

her shortcomings relative to the cleanliness of the home and controlling the children." However, this vastly understates the substantial evidence in the GAL report, which included interviews with DCF social workers and other professionals who had interacted with the family. The GAL reported that there were serious health and safety concerns, such as Diane's negligent attitude towards her daughters taking prescribed medication, removing the children from needed therapy, and failing to barricade an eighty-foot cliff near her house, which one of the children climbed down unsupervised to retrieve a toy. There were also reports that Diane's house was completely unkempt on a regular basis, and that Diane showed a striking inability to control the children at home.[17] By comparison, the GAL reported that Michael's house is "clean and orderly." Finally, the record was uncontroverted that Diane removed the children from school during the Massachusetts comprehensive assessment system (MCAS) testing to take them on vacation to Florida.[18]

---

[17] According to a DCF social worker, who was interviewed by the GAL, Diane's house was "total chaos" with "no rules and no boundaries."

[18] It appears that, while in Florida, Diane left the children unattended and engaged in conduct that resulted in police involvement.

In reviewing the order, we cannot ascertain why the judge chose not to follow the recommendations of the GAL, who reported that Michael is "the stable parent" and is "more easily accessible and [the] more cooperative" parent with whom to work. It is not obvious from the divorce judgment nisi or the accompanying memorandum that the judge considered this evidence in the record or even found that it was credible. "[A]n ultimate conclusion needs a foundation in the record supported by 'ground-level facts.'" Prenaveau v. Prenaveau, 75 Mass. App. Ct. 131, 142 (2009), quoting from Felton v. Felton, 383 Mass. 232, 240 (1981). Insofar as it relates to the award of custody, the amended judgment reflects a "clear error in judgment in weighing the factors relevant to the decision," and must be vacated and remanded. L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). On remand, the judge should either substantiate her analysis of the best interests of the children with evidence from the record, or explain why the other relevant evidence discussed herein was not weighed or credited. See Rosenberg v. Merida, 428 Mass. 182, 191 (1998) ("an award of custody [will not be sustained] 'unless all relevant factors in determining the best interests of the child have been weighed'"), quoting from Bouchard v. Bouchard, 12 Mass. App. Ct. 899, 899 (1981). We note that we do not express an opinion as to which parent should receive custody. Rather, given the gravity of the

decision and notwithstanding the judge's detailed findings, where, as here, the GAL has made a recommendation that the judge rejects, more is required to support the judge's determination. See Ardizoni, supra at 737-738 (custody order vacated where judge failed to make specific or detailed findings based on evidence within the record).

Conclusion.  The provision of the amended judgment of divorce nisi that orders Michael and Diane Ventrice to engage in and pay for court-directed mediation before either may file any subsequent action in the Probate and Family Court and the provision awarding custody of the children are vacated.  The remainder of the amended divorce judgment nisi, dated July 12, 2013, nunc pro tunc to June 14, 2013, pertaining to the division of the marital estate, is affirmed.  The matter is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

So ordered.