NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-403

J.E.M.

vs.

M.A.M.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Plaintiff J.E.M. (husband) appeals from an amended judgment of divorce nisi entered after a trial in Probate and Family Court. On appeal, the husband raises several arguments, including that the judge erred in various ways in dividing the marital estate, that the judge miscalculated the husband's income for child support purposes, and that the judge erred in granting sole legal custody of the parties' two children to defendant M.A.M. (wife), and in reducing the husband's parenting time from the temporary schedule in effect during the proceedings. We affirm.

Background. We briefly summarize the facts pertinent to the issues on appeal, as drawn from the trial judge's findings and supplemented by undisputed evidence in the record. See Pierce v. Pierce, 455 Mass. 286, 288 (2009).

1.  Marriage and separation.  The parties were married in 2009.  At the time, the parties each individually owned various assets acquired prior to the marriage, including real property.  Relevant here is that the husband owned a three-unit rental property in South Boston and a condominium that was occupied by his mother.

During the marriage, the parties had an "upper-middle-income lifestyle."  Both parties worked and, with the exception of the husband's premarital assets, contributed equally to the marital estate.  The parties jointly purchased a home shortly after they were married (marital home), and their two children were born in 2010 and 2011.  In January 2017, the husband moved out of the marital home and filed for divorce shortly thereafter.  The wife counterclaimed for divorce.

2.  Temporary orders.  Pursuant to orders entered prior to trial, the wife had exclusive use and occupancy of the marital home until December 2017, after which she moved to a nearby property that she recently purchased.  By that time and as authorized by the court, the husband had refinanced the existing mortgage on the marital home and removed the wife from the deed to that property.

With respect to the children, the parties shared temporary legal custody.  The children resided primarily with the wife, and the husband had parenting time for dinner every other

2

Monday, overnight every Wednesday, and from Friday evening to Monday morning every other weekend. The husband paid the wife $581 per week in child support.

Finally, the court appointed a guardian ad litem (GAL) to report and make recommendations on custody and a parenting plan. The GAL filed her report with the court in September 2017, wherein she ultimately recommended that the parents share legal and physical custody of the children.

3. <u>Findings and rulings</u>. The case was tried on seven days from October 2018 until November 2019. In January 2021 the trial judge issued detailed findings of fact, together with a rationale. In short, the judge concluded that the parties were entitled to an "approximately equal division of the marital estate," exclusive of three of the husband's premarital assets. For the premarital assets, the judge awarded the wife twenty-five percent of the value of the South Boston property and the husband's premarital retirement accounts, and none of the value of the condominium where the husband's mother resided. The judge then calculated the value of each asset and considered which party would retain the asset after the divorce. Based on these calculations, the judge determined that the husband was required pay the wife $508,465 to effectuate an equitable division of the property.

With respect to the children, the judge left the parenting schedule established by the temporary order largely unchanged, except that the husband's dinner visits on alternating Mondays were eliminated. The judge also awarded the wife sole legal custody. The judge then applied the Child Support Guidelines (guidelines), and determined that the husband's weekly child support obligation was $740.[1]

After judgment entered the husband filed a motion to alter or amend arguing, among other things, that the only way to meet his financial obligations under the judgment was to sell the South Boston property. The husband requested that the judge reassess the division of assets in light of the capital gains tax liability and other expenses that he would incur as a result of the sale. The judge denied the motion as to that request, but he allowed it in other respects not relevant to this appeal. An amended divorce judgment subsequently entered.

Discussion. 1. Property division. The husband argues that despite determining that "an approximately equal division of the marital estate is most equitable," the judge failed to effectuate such a division. We employ a two-step analysis in our review under the equitable distribution statute, G. L. c. 208, § 34. See Adams v. Adams, 459 Mass. 361, 371 (2011).

_____

[1] The judge found the wife had no current need for alimony.

4

First, we determine whether the judge considered all relevant § 34 factors in his findings.  See id.  Second, we "determine whether the reasons for the judge's conclusions are 'apparent in [the judge's] findings and rulings'" (citation omitted).  Id.  "A division of marital property which is supported by findings as to the required factors will not be disturbed on appeal unless 'plainly wrong and excessive'" (citation omitted).  Passemato v. Passemato, 427 Mass. 52, 57 (1998).

Here, the judge made findings on the relevant § 34 factors and the parties do not argue otherwise.  We turn to the husband's specific arguments that the property division was plainly wrong and excessive.

a.  Marital home.  Prior to trial, the husband refinanced the mortgage on the marital home.  At that time, he consolidated a total of $58,258 in individual and joint debts into the mortgage, thereby reducing the home's equity by that amount.  The debts were comprised of $39,182.42 for the husband's car loan and individual credit card debt, and $19,075.94 for joint credit card debt and an outstanding water bill.[2]  In the division of assets, the husband received the marital home.  To calculate the equity value the husband received in the home, the judge first determined the fair market value, then deducted the

_____

[2] The amount of the water bill was $251.95.  These amounts were listed on the husband's financial statement.

5

balance of the mortgage, and then added back the $58,258.  The judge's calculation resulted in the husband being solely responsible for the $58,258 debt.

We discern no error.  It is not contested that the bulk of the debt ($39,182) was the husband's individually, and moreover, the judge could have found that the joint credit card debt was incurred individually by the husband after the parties' separation, based on the wife's testimony that the husband shut off her access to the joint credit card "[a]lmost immediately" after he moved out of the marital home.  And in any event, the judge's decision to make the husband responsible for the entirety of that debt "flows rationally from the judge's findings under § 34" (citation omitted).  Casey v. Casey, 79 Mass. App. Ct. 623, 629 (2011).  The judgment left the husband with more assets than the wife, including an income-generating rental property.  The husband also earned more than the wife.[3] Therefore, the judge's treatment of the $58,258 debt did not render the property division plainly wrong and excessive.[4]

_____

[3] The judge found the husband's gross weekly income was $4,362. The judge found that the wife, who was then working on a reduced schedule, could resume full-time work.  If the wife worked on a full-time basis, the judge found, her gross weekly income would be $2,326.

[4] The wife did not receive "double recovery," as the husband argues.  The judge's decision to add the debt back into the equity of the house merely relieved the wife of an obligation to pay that debt and made that portion of the mortgage solely the

6

b. _Wife's trust interest_. The wife received a one-fifth interest in a trust that was settled after the parties' separation by the wife's mother (who later passed away during the trial). The trust held title to two pieces of real property, one in which the wife's stepfather resided and the other that was under agreement for sale for a purchase price of $400,000. The husband argues that the judge committed clear error in treating the wife's trust interest as an opportunity to acquire future assets and income, and not as part of the marital estate subject to equitable distribution. See G. L. c. 208, § 34.

Again, we perceive no error. The parties each had individual assets, and while the judge could have divided such property as part of the marital estate, it was well within his discretion not to do so. See _Rice_ v. _Rice_, 372 Mass. 398, 400 (1977) (judge may "assign to one spouse property of the other spouse whenever and however acquired"). As noted above, the wife's trust was settled after the parties' separation and was funded during trial. At the time of trial, the wife had not yet received a distribution from the trust but the judge concluded that the wife would be entitled to one once the real property

_____

husband's responsibility. In essence, the judge treated this debt like the remaining liabilities and assigned it exclusively to the husband.

7

held in the trust was sold. The divorce judgment did not afford the husband any portion of the wife's trust interest and, thus, treated that trust interest similarly to the husband's premarital assets -- that is, the condominium, the premarital retirement funds, and the South Boston property, which were not divided equally between the parties. See Baccanti v. Morton, 434 Mass. 787, 792 (2001) (judge has considerable discretion in equitable division of premarital assets determined to be part of marital estate). The judge did not abuse his discretion in concluding that, just as the wife did not contribute to the husband's acquisition of his premarital property, the husband did not contribute to the wife's postseparation acquisition of her trust interest, which in any event amounted to a small fraction of the overall value of the marital estate. See Savides v. Savides, 400 Mass. 250, 253 (1987).

c. South Boston property. The husband challenges the value assigned to his South Boston rental property. The wife presented evidence from an expert real estate appraiser that the fair market value of the South Boston property was $1.6 million. The expert utilized the sales comparison approach, and he identified four comparable sales and one active listing. The husband did not present his own expert testimony on the issue, instead testifying on his own behalf that the property was worth $1.05 million, representing the amount of an appraisal the

8

husband obtained at some point during litigation ($1.25 million) less the amounts for repairs and improvements that the husband believed were necessary.  The judge credited and adopted the wife's expert's valuation after making findings regarding the expert's basis.  He expressly did not credit the husband's valuation.  This was not, as the husband argues, clear error.  See Child v. Child, 58 Mass. App. Ct. 76, 78 (2002) (judge may accept reasonable expert opinion on valuation).

The husband's arguments to the contrary are unavailing.  The husband first argues that the valuation failed to account for necessary repairs to the property.  The expert noted in his report that the husband indicated it would cost $300,000 to bring plumbing, heating, and wiring issues up to code.  On cross-examination, the expert testified that he had no reason to doubt the husband's reports about the deficiencies in the property, but that the husband did not provide any backup information to support his representations.  Moreover, the expert's valuation considered that the property was in "average condition" based on his inspection of the premises (supported by photographs contained in his report) and, notably, the information provided by the husband.  The judge accepted that point and adopted it in his findings.  See Baccanti, 434 Mass. at 791 (reversal not required "simply [because judge] did not make the findings sought by the husband").

9

The husband's argument that the expert incorrectly disregarded certain comparable sales fares no better.  The husband focuses on two other properties identified in the expert's report that were of similar age, had the same number of bedrooms, and were in close proximity to the South Boston property, but sold for considerably less than the comparables used by the expert.  While the expert did not explicitly provide his reasoning for not using those two properties as comparables, the reasoning is apparent from his report.  Those two properties only have two bathrooms; thus, it was reasonable to infer that they contain fewer than three units.  The majority of the comparables used by the expert, like the South Boston property, were three-unit homes.[5]  In any event, the weighing of such evidence is a matter for the trier of fact, and here the judge's findings were not clearly erroneous.  See Whelan v. Whelan, 74 Mass. App. Ct. 616, 619 (2009).

d.  Tax consequences.  The husband maintains that the judge erred in failing to consider the tax consequences of the property division -- specifically, the husband asserts that he will have to sell the South Boston property and, as a result, incur roughly $360,000 in tax liability.

---

[5] The judge stated that all five comparables were three-unit properties.  However, the expert testified that the fourth comparable sale was "a larger two-family."  The discrepancy does not undermine the expert's conclusion.

10

This argument was not raised at trial, but rather was first raised in a posttrial motion. At that time, the husband asserted that he would have to sell the South Boston property, but he provided no detail or further evidence in that regard. Nothing in the divorce judgment compelled the sale of the property. Under the circumstances, the judge was within his broad discretion to decline to adjust the value of the South Boston property based on the husband's bare representation that he would have to sell the property.[6]

This is particularly so in absence of further evidence on the tax consequence issue, and where the issue was first raised after trial. A postjudgment motion to amend may be a proper vehicle to raise the issue in some circumstances, but the request must be supported by "appropriate evidence in the record" (citation omitted). L.J.S. v. J.E.S., 464 Mass. 346, 350 (2013) (motion to amend properly raised issue that alimony provisions in judgment could be recharacterized as child support for Federal tax purposes). The judge was not plainly wrong for denying the motion on this record, nor was the property division

---

[6] The husband relies on Williams v. Massa, 431 Mass. 619, 629 (2000), for the proposition that he need not present evidence of the necessity of a sale. Williams, supra at 629-630, is distinguishable in that the estimated capital gains tax as applied to the valuation of certain assets was a live issue at trial in that case and the judge ultimately awarded those assets to the husband.

11

excessive in wife's favor as a result.  See Rice, 372 Mass. at 402 n.4; Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 866 (1989).

2.  Child support.  The husband next challenges the child support calculation, claiming that the judge erred when he refused to apply certain deductions to the husband's rental income from the South Boston property.

Specifically, in determining that the husband's weekly rental income was $811, the judge expressly did not deduct from that income the husband's reported annual repair expenses of $25,613, explaining that the "[h]usband admitted on cross-examination that these are not recurring expenses."  The $25,613 amount was reflected in the husband's financial statement, as it was the total of $9,350 for repairs and $16,263 for "Reserves for Necessary Repairs/Maintenance."  During cross-examination, the husband testified with respect to the $9,350 figure that "[s]ome may be, some may not be" recurring expenses.  There was no further explanation of the $16,263 "Reserves" amount.  In light of this record, we cannot say that the judge abused his discretion in declining to deduct the purported repair expenses from the rental income.  See Smith-Clarke v. Clarke, 44 Mass. App. Ct. 404, 406 (1998) (reasonable for judge to disregard certain claimed items based on husband's lack of records substantiating claimed business expenditures).

12

The judge also found that the husband improperly deducted his mortgage principal payments of roughly $8,570 from his gross rental income. Neither the guidelines nor our case law expressly authorize, let alone compel, deduction of mortgage principal payments from a parent's rental income for child support purposes. Unlike interest payments, the payments of principal directly increase the husband's equity in the South Boston property, and thereby increase his net worth. As such, it was a permissible exercise of the judge's discretion to decline to treat mortgage principal payments as business deductions for child support purposes.[7] See Child Support Guidelines § I(C) (2018) (claimed business expenses carefully reviewed to determine appropriate level of gross income available to parent). Cf. Whelan, 74 Mass. App. Ct. at 627 (business-related expenses "reasonable and necessary to the production of income" may be deducted from rental income).

3. Custody. Finally, the husband challenges the judge's decisions on legal and physical custody of the parties'

---

[7] Both parties highlight case law from other jurisdictions demonstrating a split on the issue of whether a parent's available income may be reduced by mortgage principal payments for child support purposes. Irrespective of those extrajurisdictional cases, "[t]he guidelines and our case law leave the definition of income flexible and the judge's discretion in its determination broad." Casey, 79 Mass. App. Ct. at 634. We are satisfied that the judge's decision on the issue in these circumstances was not an abuse of discretion.

13

children.  Custody determinations are guided by the best interests of the children.  See Ardizoni v. Raymond, 40 Mass. App. Ct. 734, 738 (1996).  We will not disturb the judge's factual findings unless they are "plainly wrong or clearly erroneous."  Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015).  "The judge's findings must, however, 'add up to sufficient support for [the] custody order'" (citation omitted).  Ventrice v. Ventrice, 87 Mass. App. Ct. 190, 195 (2015).  We review the ultimate determination on custody for an abuse of discretion in how the judge accounted for the children's best interests.  See Schechter, supra.

a.  Legal custody.  The husband argues that the judge abused his discretion in ordering legal custody to the wife, rather than joint legal custody.  He contends that the judge ignored examples of the parties' successful exercise of joint custody, disregarded findings of the wife's unilateral decision-making, and failed to explain why he did not adopt the GAL's recommendations.

The judge explained that shared legal custody was not appropriate "[b]ased on the parties' inability to communicate effectively."  Finding that the wife was historically responsible for scheduling the children's medical appointments and was more involved in decisions on schooling, and that the husband had refused to cooperate in obtaining certain academic

14

and psychological support for one of the children, the judge determined it was in the children's best interests to award sole legal custody to the wife.

The judge's legal custody determination was amply supported by his findings.  The husband blocked the wife's cell phone number so that she could not communicate with him by phone call or text message through the time of trial.  The husband also did not allow the children to communicate with the wife during his parenting time.  The wife set up "Our Family Wizard" (per the GAL's recommendation) and a shared calendar as a means of communicating about the children, but the husband did not participate in either mode of communication.

The parties communicated via e-mail, but the e-mails were "replete with derogatory comments toward each other."  The judge made detailed findings on several instances when the husband was hostile to the wife, including while attending the children's therapy appointments.  While the husband maintains that the parties agreed on some parenting decisions, the judge detailed many times when they could not, and specifically noted concern about the husband's refusal to cooperate in obtaining certain supports for one child.  See Mason v. Coleman, 447 Mass. 177, 182 (2006) (shared legal custody "generally appropriate only if the parties demonstrate an ability and desire to cooperate amicably and communicate with one another to raise the

15

children").  Compare <u>Carr</u> v. <u>Carr</u>, 44 Mass. App. Ct. 924, 925 (1998), cert. denied, 525 U.S. 1073 (1999) (joint custody inappropriate where "the relationship of the parties has been dysfunctional, virtually nonexistent, and one of continuous conflict").  These findings sufficiently support the judge's ultimate conclusion that joint legal custody was not in the children's best interests.

The husband's argument that the judge failed to consider the GAL's recommendation of joint legal custody is without merit.  The judge was not required to adopt the GAL's recommendations.  See <u>Mason</u>, 447 Mass. at 186.  Rather, the judge considered the GAL's recommendation and, as he was required to do, drew his own conclusions.  See <u>D.B</u>. v. <u>J.B</u>., 97 Mass. App. Ct. 170, 182 (2020).  In doing so, the judge expressly considered the parties' communications during the two-year period <u>after</u> the GAL's September 2017 report, and adequately explained why he chose not to follow the GAL's recommendation.

b.  <u>Physical custody</u>.  Finally, the husband argues that the judge failed to explain the reduction in the husband's parenting time by eliminating Monday dinner visits on alternating weeks. In eliminating those dinner visits, the judge found that "it is in the children's best interests to limit the number of exchanges between the parties."  The judge's findings described

16

instances when the husband made derogatory remarks toward the wife in the children's presence during parenting exchanges and at other times when they were together for reasons pertaining to the children. These incidents largely postdated the GAL's report, in which the GAL observed that the husband's inability to refrain from making negative comments to and about the wife could be potentially damaging to the children's well-being. Where the husband was on notice that his behavior was detrimental to the children and failed to alter it, the judge was within his discretion to decrease parenting time to minimize the number of parenting exchanges where such conduct could occur.[8] See Shak v. Shak, 484 Mass. 658, 664-665 (2020) (use of

---

[8] The judge credited the wife's testimony concerning the two most recent Monday night parenting exchanges occurring in summer 2019, including that the husband called the wife a "fucking whore" and a "bitch" in the presence of the children.

disparaging language may factor into best interest analysis for custody determinations).[9]

Amended judgment of divorce
  affirmed.

By the Court (Wolohojian,
  Englander &
  D'Angelo, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered:   March 29, 2023.

---

[9] The wife's request for appellate attorney's fees and double costs is denied.
[10] The panelists are listed in order of seniority.