NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1158

MOLLY COSEL WENDT

vs.

WILLIAM GEORGE WENDT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant (father) appeals from a judgment of divorce nisi (divorce judgment), arguing principally that the judge erred in (1) awarding primary custody to the plaintiff (mother) and modifying the parties' existing parenting schedule, (2) dividing the marital assets, and (3) determining child support. For the reasons that follow, we vacate so much of the divorce judgment as set the weekly parenting schedule and remand for findings reflecting appropriate consideration of the children's religious development.  On all the other issues, we affirm the divorce judgment.

Background.  The trial in this case occurred over four days in March 2022 and included testimony from fifteen witnesses.  We present the essential facts found by the judge in his extensive

written findings, reserving details for our discussion of the issues raised.

The parties married on March 21, 2014.  The mother gave birth to their first son in 2015, and their second son in 2016.  On February 6, 2020, the mother filed a complaint for divorce on the grounds of an irretrievable breakdown of the marriage; the father filed a timely answer and counterclaim.  Through the divorce proceedings, both parties sought custody of the children and ownership of the marital home and property located in Tyringham.

1.  Custody.  The judge found that the mother was a "caring, responsible and attentive parent," who served as the lead caregiver for the children throughout their lives.  The judge found that while the "[f]ather is a caring and loving parent[, he] has not always been able to act in a manner that supports his children" due to his conflicts with care providers and grandparents, inattentiveness to the children's schooling, and his behavior in front of the children.  The judge granted the mother with primary physical custody and fashioned a parenting schedule, which we discuss in greater detail below.  The judge granted the parties joint legal custody.

2.  Parties' assets.  The marital home is a property owned jointly by the parties.  In 2016, the mother's parents gave the property to the couple as an advance on her inheritance.  The

2

value of the home at the time that it was gifted was $260,000. The father's father, Bill Wendt, initially gifted the father and mother $1.9 million to improve the property.[1] One of the principal objectives of the project was to create a photography studio for the father. By February 2019, the father, who had taken the primary role to improve the property, exhausted the entire $1.9 million, yet had not completed the project. Bill Wendt then provided the father with an additional $2 million. At the time of trial, the value of the unencumbered property was appraised at $850,000.

The judge ordered that the marital home be retained by the mother but required that the mother pay the father $250,000 to create an equitable distribution of the marital estate.

The judge also found that father was the sole beneficiary of an irrevocable trust established by his parents. The value of this trust was $5,492,655.62 at the end of 2020.

Mother's assets included her retirement fund ($50,093), a Roth individual retirement account (IRA) ($3,313), and various bank accounts totaling less than $10,000 at the time of trial.

3. _Occupation, income, and employability_. During the marriage, the father held various compensated positions with his

_____

[1] Bill Wendt transferred the funds for this gift from an irrevocable trust of which the father was the beneficiary to a brokerage account controlled by the father.

3

parents' business, Midwest Metal Products, Inc. (Midwest).  In 2019, the father received compensation of $100,200 from Midwest, despite having performed no work or services.  The father's income from Midwest decreased to $48,000 annually during the pendency of the divorce litigation.  In addition, the father earned more than $100,000 per year as a commercial photographer prior to the marriage.  The court found, based largely on the father's assertions, that the father had the capacity to earn $100,000 per year as a commercial photographer.

The mother has been employed as a teacher since 2011.  The judge found her annual earnings to be $64,844.  The mother's prospects for continued employment with the school district are stable.

Based on his review of the parties' assets and liabilities, the judge ordered, in accordance with the Massachusetts Child Support Guidelines, that the father pay $532 in child support to the mother per week.

Discussion.  1.  Custody.  We review a judge's ultimate custody determination for an abuse of discretion.  See Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015).  "In custody matters, the touchstone inquiry [is] . . . what is best for the child" (quotation and citation omitted).  Hunter v. Rose, 463 Mass. 488, 494 (2012).  See G. L. c. 208, § 28.  "The determination of which parent will promote a child's best

interests rests within the discretion of the judge . . . [whose] findings . . . 'must stand unless they are plainly wrong.'" Hunter, supra, quoting Custody of Kali, 439 Mass. 834, 845 (2003).  While there is no "definitive list of criteria" for the judge to consider when assessing the children's best interests, "[certain] constants are revealed in our [cases]," including "the need for stability," "the decision-making capabilities of each parent to address the child's needs, and the living arrangements and lifestyles of each parent and how such circumstances may affect the child" (citation omitted).  El Chaar v. Chehab, 78 Mass. App. Ct. 501, 506 (2010).

The father sets forth numerous arguments that the judge abused his discretion and made clearly erroneous factual findings in his custody determination.  We address each one in turn below.

a.  Relevant factors in determining custody.  The father first contends the judge failed to consider multiple, relevant factors in determining custody.  We disagree.  In consideration of the best interests of the children, the judge addressed the ability for the parents to provide stability, the decision-making of each parent, and the impact of the parents' lifestyles on the children.  For example, in finding that the father could not provide the same level of stability that the mother could, the judge cited that the father brought the children to school

5

late on numerous occasions and was combative with the children's caretakers.  See E.K. v. S.C., 97 Mass. App. Ct. 403, 405-406, 409 (2020) (affirming grant of sole legal and primary physical custody to father in part due to mother's problematic interactions with school and for frequently bringing children to school late).  The judge also carefully considered, and ultimately rejected, the father's claim that the mother's relationship with her new partner placed the children in danger.  We discern no error with these findings.  See Adoption of Cadence, 81 Mass. App. Ct. 162, 166 (2012) ("In recognition of the trial judge's superior position to evaluate witness credibility and weigh the evidence, we review her findings with substantial deference and will not disturb those findings unless clearly erroneous" [citation omitted]).

b.  Nexus to the father's parenting.  The father next argues that most of the behavior and incidents that the judge referenced when making the custody determination do not reflect on the father's ability to be a good parent.  We find this argument unpersuasive because the judge's findings and rationale established a clear link between the father's behavior and his parenting abilities.  For example, the judge credited the mother's testimony that the father, during an argument with the mother in the presence of the children, threatened to slit the

throat of the mother's new partner.[2]  The detrimental impact this

threat of violence would have on young children is implied in

the judge's findings.

The judge cited other concerns, including that the father

sent a child to school with only blueberries for lunch, that he

frequently brought a child to school late, that he forgot to

pick the children up from school one day, and that on occasion

he was inattentive to his children's needs at school.[3]  These

instances could be reasonably perceived to reflect adversely on

the father's parenting ability.  See Smith v. McDonald, 458

Mass. 540, 547 (2010) ("The judge is afforded considerable

freedom to identify pertinent factors in assessing the welfare

of the child and weigh them as [he] sees fit").

c.  Alleged improper punishment of the father.  At trial,

the father asserted that the mother had exposed the children to

dangerous mold, conspired with the special education department

to assess their youngest child with a disability, and exposed

the children to her new partner in unhealthy ways.  On appeal,

---

[2] While we recognize that the husband denied making this
threat in his trial testimony, we do not conclude the judge's
credibility finding on this issue to be plainly wrong or clearly
erroneous.  See Adoption of Cadence, 81 Mass. App. Ct. at 166.

[3] For instance, the judge found that "[o]n special school
days (beach day and Halloween), Father has sent the children
without the requested items.  The boys were the only children
without the items."

the father alleges that the judge granted primary physical custody to the mother to punish the father for making these arguments. This contention is without merit. The judge's analysis of the father's claims of the mother's unfitness reflects a close examination of the evidence, assessments of the witnesses' respective credibility, and careful consideration of both the mother's and father's ability as a parent, all through the lens of the best interests of the children. See Hunter, 463 Mass. at 494.

The father also argues that the judge improperly cited the father restricting the children's time with the maternal grandparents as a rationale in the custody determination. The father alleges that this is a violation of the father's constitutionally protected rights to decide with whom his children associate. The father misconstrues the constitutional protection afforded to parental decision-making. The protection does not go so far as to prevent a judge from considering any interactions with grandparents in a custody determination. Instead, it prevents a court from requiring grandparent visitation where an otherwise fit parent has made the opposite decision. See Troxel v. Granville, 530 U.S. 57, 72 (2000) (order requiring visitation with children's grandparents "was an unconstitutional infringement on [parent's] fundamental right to make decisions concerning the care, custody, and control of

8

[their children]").  In the instant case, the judge did not require any visitation with the grandparents.  Instead, the judge's discussion of the father's antagonistic interaction with the grandparents related to his assessment of the father's inability to maintain positive relationships with the children's caregivers.[4]

d.  Religious development of the children.  The father challenges the order that provides the mother custody of the children each week from Saturday at 4:00 P.M. until Thursday at 4:00 P.M. for three weekends per month during the school year.  Before the judge's order, the father had regularly celebrated Catholic Mass with the children either on Saturdays at 4:00 P.M. or on Sunday mornings.  The father argues that the judge's schedule prevents him from pursuing the Catholic faith with his children because it conflicts with the prescribed times Catholics celebrate weekly Mass.  The father requests that the custody determination be reconsidered on remand because the impact on the children's religious development was not considered.

---

[4] The judge noted that the father had "approached [the mother's father] in an angry manner [and] was yelling, [with] spit . . . emanating from his mouth."  After this interaction the father "forbade the children from going up to their grandparents' home."

Religion is one of the many relevant factors that a judge considers in making a custody determination based on the best interests of the children. See Opinion of the Justices to the Senate, 427 Mass. 1201, 1204 & n.2 (1998). Where, as here, the parties have shared legal custody, both parents are responsible for and involved in making major decisions about the children's welfare, including their religious development. See G. L. c. 208, § 31. The parties do not dispute that the children were raised Catholic and that the father was the only parent who regularly took the children to church. Notably, both the mother and the father had submitted posttrial proposed judgments indicating the children would be raised Catholic, with the father responsible for bringing the children to Mass on a weekly basis; both parties' proposed parenting plans would have allowed the father to take his children to Mass most weekends.[5]

Instead of adopting either of the proposed parenting schedules, the judge created a new plan, which requires that the

---

[5] We note that the parties agreed about the children's religious upbringing and neither sought an order curtailing the father's right to practice religion or limiting the children's exposure to the father's religion. Contrast Kendall v. Kendall, 426 Mass. 238, 250 (1997), cert. denied, 524 U.S. 953 (1998) (divorce judgment precluded father from sharing certain aspects of his religious beliefs with children); Felton v. Felton, 383 Mass. 232, 237 (1981) (modification judgment ordered father to "refrain[] from giving his children any religious training or education which shall be in conflict or contrary with the religious training and beliefs of the custodial parent").

10

children be in their mother's custody during times that conflict with Mass for three out of four weeks per month during the school year.  The judge's findings do not address the parties' shared view that the father should continue bringing the children to Mass, nor is there any basis apparent in the judge's findings for declining to adopt it.[6]  We therefore cannot ascertain whether the judge, in fashioning the parenting schedule, considered the children's religious development as a factor relevant to determining their best interest.  Accordingly, we vacate so much of the divorce judgment as set the weekly parenting schedule and remand for the judge to make findings reflecting appropriate consideration of the children's religious development.  See Ventrice v. Ventrice, 87 Mass. App. Ct. 190, 196 (2015), quoting Rosenberg v. Merida, 428 Mass. 182, 191 (1998) (appellate court will not sustain custody determination "unless all relevant factors in determining the best interests of the child have been weighed").

e.  Judge's findings.  The father next argues that four specific facts in the judge's findings were unsupported, and when taken as a whole, should leave this court "with the

_____

[6] Instead, he judge concluded the parenting schedule to be in the best interests of the children by reasoning that "[the mother] is in a better position to supervise the minor children during the school week in assuring they were on time for school and properly prepared."

11

definite and firm conviction that a mistake has been committed" (citation omitted).  Guardianship of Clyde, 44 Mass. App. Ct. 767, 774 (1998).  Specifically, the father alleges that the judge's findings concerning (1) the father's past dispute with the children's school, (2) the father sending one child to school with only blueberries for lunch, (3) the father forgetting to pick the children up from school, and (4) the father dictating the parenting schedule, are all erroneous.

Affording due deference to the judge's assessment of the credibility of witnesses and weight of the evidence, we are satisfied that none of these challenged findings were either unsupported or clearly erroneous.  See Adoption of Paula, 420 Mass. 716, 730 (1995) ("We do not sit as a trial court to review de novo the evidence presented by the parties").

Finally, the father alleges that the judge's findings with respect to the custody decision are "belittling and suggestive of gender bias."  The father points to two parts of the judge's findings to make this point.  First, the judge's finding that "[b]y Mother taking on [the majority of the physical labor and cognitive labor], it allowed Father to pursue his hobbies of cycling and playing the saxophone."  And second, the judge's findings as to the father's financial dependency on his parents. We conclude that neither of these findings suggest gender bias, but instead are appropriate considerations in the judge's

12

determination of custody and the division of marital assets. See Smith, 458 Mass. at 547. Moreover, we conclude the entirety of the judge's findings and rationale to be free from bias and belittlement.

2. **Division of marital assets.** The husband argues that the judge abused his discretion in determining the division of marital assets, and that the division falls "outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). This court employs a two-step analysis in our review under the equitable distribution statute, G. L. c. 208, § 34. See Adams v. Adams, 459 Mass. 361, 371 (2011), S.C., 466 Mass. 1015 (2013). First, we examine whether the judge considered all relevant § 34 factors in his findings. See id. The mandatory factors are:

> "[T]he length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income, and the amount and duration of alimony, if any."

G. L. c. 208, § 34. Notably, "[w]hat weight any of the factors in § 34 shall receive rests within the broad discretion of the judge." Handrahan v. Handrahan, 28 Mass. App. Ct. 167, 168 (1989).

Second, we "determine whether the reasons for the judge's conclusions are apparent in [the judge's] findings and rulings"

13

(quotation omitted). See Adams, 459 Mass. at 371. "A division of marital property which is supported by findings as to the required factors will not be disturbed on appeal unless plainly wrong and excessive" (quotation omitted). Passemato v. Passemato, 427 Mass. 52, 57 (1998).

The father first argues that the judge gave unnecessary and excessive weight to the father's ability to acquire future income and assets. The judge, as discussed further infra in our review of the child support analysis, reasonably found that the father could resume his career as commercial photographer and earn $100,000.

Regarding the trust of which the father is the sole beneficiary, the judge acknowledged that the father "has no right to demand distributions," but reasonably determined based in part on the evidence of the father's reliance on his parents that the trust "gives [f]ather a secure safety net."

The father next argues that the judge disregarded the length of the marriage and the financial and nonfinancial contributions made by both parties to the marriage. "Mathematical precision is not required of equitable division of property," Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 861 (1989), and "[t]here is no mathematical formula to determine what weight a judge should accord to any of the factors in § 34." Williams v. Massa, 431 Mass. 619, 631 (2000). Where the

14

father argues that the judge failed to "meaningfully consider" the length of marriage, we first point out that the weight the judge assigns to each factor is within the judge's broad discretion. See Handrahan, 28 Mass. App. Ct. at 168. See also Hanify v. Hanify, 403 Mass. 184, 191 (1988) (where wife and husband were married for six years, and had two children, trial judge equitably divided estate based on wife's "dire financial circumstances").

The father's argument that the judge did not adequately consider the contributions of the parties to the marriage also falls short. While this factor is discretionary under G. L. c. 208, § 34, the judge carefully analyzed the parties' contributions and found that "[e]ach party contributed earned and unearned income to further support the marital enterprise." The father argues that his parents' significant financial contribution toward renovating the marital home should be more heavily considered. However, the record in this case reveals that the father spent a substantial portion of these funds to erect a photography studio for his own use. Ultimately, the multimillion dollar investment led to only a $590,000 increase in the property's value. Taken together, the judge's division of the marital assets was neither "highly disparate," nor inadequate as to the consideration of these contributions to the marital partnership.

15

The father criticizes the judge's findings as showing "apparent disdain" for the father, and as exhibiting "bias toward [the father's] unemployment." To substantiate these allegations the father points toward the judge's language where he describes the father's interest in art, outdoor sports, and the saxophone, that the father has been substantially supported by his parents, and that the mother's lead effort in taking care of the children allowed the father to pursue his hobbies. We conclude that these findings do not exhibit any elements of disdain against the father and are instead relevant considerations for purposes of the divorce. See G. L. c. 208, § 34 ("The court may also consider . . . the contribution of each of the parties as a homemaker to the family unit").

The father argues that "no justification can reasonably be inferred to support" the judge's decision to defer receipt of father's $250,000 share of the marital estate. We disagree, as it is reasonable to infer that the judge ordered the deferred payment based on his evaluation of the information bearing on the mother's ability to satisfy this payment. As a result, we find that the judge's decision to award the father with a deferred payment was not outside the range of reasonable alternatives and is an appropriate exercise of the judge's discretion. See L.L., 470 Mass. at 185 n.27.

16

Lastly, the father argues that the judge incorrectly found that Bill Wendt gifted, rather than loaned, the father and mother $2 million to improve the marital estate. We conclude that this finding is not plainly wrong. See Zaleski v. Zaleski, 469 Mass. 230, 237 (2014). The judge noted how the father waited until seven months after the mother told the father that she wanted to divorce to inform his parents. Once informed of this news in November 2019, Bill Wendt was upset, and he immediately stopped further funding of the ongoing project at the marital home. In December 2019, the father's parents prepared a loan agreement, signed by the father, which required that he repay the moneys advanced in February 2018 toward the marital home's renovation. The judge found that there had been no discussion about entering into a lender-debtor relationship prior to November 2019. Further, the judge found mother was never informed of the agreement. After the loan agreement was created, the father failed to make any payments on the loan or raise any defenses once the father's parents sued in relation to the loan.

In concluding this alleged loan amounted to "a sham obligation," the judge relied on numerous adverse credibility determinations as to the testimony of the father and his parents. See Adoption of Cadence, 81 Mass. App. Ct. at 166.

17

3. Child support. The father argues that the judge abused his discretion by (1) attributing income to the father, and (2) ordering child support based on attributed and actual income. "We review the judge's decision to consider attributed income [in determining child support], rather than actual income, for an abuse of discretion." Davae v. Davae, 100 Mass. App. Ct. 54, 57 (2021).

"Income may be attributed where a finding has been made that either party is capable of working and is unemployed or underemployed." See Massachusetts Child Support Guidelines: Child Support Guidelines § I(E)(1) (Aug. 2021) (Guidelines). "If the [c]ourt makes a determination that either party is earning less than he or she could through reasonable effort, the [c]ourt should consider potential earning capacity rather than actual earnings in making its child support order." Guidelines § I(E)(2). The judge found that the father "has the capacity to earn $100,000 per annum," relying on evidence of the father's past earnings as both a commercial photographer and consultant for his parents' business. This finding is based in large part on the father's testimony and evidence that (1) he currently is working simultaneously as a commercial photographer and as a consultant for his parents' business; and (2) he historically earned $100,000 per year when working in each of those roles separately. Accordingly, we cannot say the judge abused his

18

discretion in concluding that the father is capable of earning the same amount while simultaneously working in those roles. See L.L., 470 Mass. at 185 n.27.

The judge appropriately considered the father's actual income at the time of the trial and concluded that he could earn more with reasonable effort. We reject the father's argument that he should not have to pay $532 weekly because child support can only be calculated based on either attributed income or actual income. We have held that "a judge should determine by specific and detailed findings of fact whether an individual will be able to earn additional income with reasonable effort before attributing income." Wasson v. Wasson, 81 Mass. App. Ct. 574, 580-581 (2012), quoting Flaherty v. Flaherty, 40 Mass. App. Ct. 289, 291 (1996). Here, the judge determined that the father could earn additional income with reasonable effort, and reasonably calculated the father's attributed income to include both his earnings from Midwest and his commercial photography pursuit because the father is capable of earning all of such income simultaneously. Thus, the judge did not err by calculating child support based on the father's earning capacity. See, e.g., id. at 581.

Conclusion. We vacate so much of paragraph I(b)(ii) of the divorce judgment as pertains to the weekly parenting schedule, and remand for further proceedings consistent with this

19

memorandum and order.  Pending further order or judgment of the Probate and Family Court, the existing provisions of the divorce judgment regarding the weekly parenting schedule shall remain in effect as a temporary order.  We affirm the divorce judgment in all other respects.[7]

So ordered.

By the Court (Meade, Singh & Smyth, JJ.[8]),

*Paul Little*

Assistant Clerk

Entered:  May 15, 2024.

---

[7] The plaintiff requests an award of costs pursuant to Mass. R. A. P. 26, as appearing in 481 Mass. 1655 (2019).  We are not persuaded that costs are appropriate in this case.

[8] The panelists are listed in order of seniority.